Bennie BREWER, Appellee,

v.

Dave PARKMAN, individually and in his official capacity as Sheriff of St. Francis County, et al., Appellant.

No. 89–2980EA.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1990.

Decided Nov. 15, 1990.

Fletcher Long, Jr., Forrest City, Ark. (Butler, Hicky & Long, Forrest City, Ark., on the brief), for appellant.

Roy C. Lewellen of Marianna, Ark., for appellee.

Before LAY, Chief Judge, HEANEY and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Dave Parkman appeals from a final judgment entered October 30, 1989, in the Eastern District of Arkansas, Henry Woods, *District Judge,* awarding back pay to appellee Bennie Brewer, who was terminated from his position as Deputy Sheriff of St. Francis County, Arkansas, in violation of his due process rights.

Brewer was terminated from his employment as Deputy Sheriff of St. Francis County by Parkman after approximately 10 years of service. After a bench trial, the district court found that Brewer was terminated without a hearing in violation of his due process rights. The court ordered that a hearing be conducted and awarded Brewer back pay from the date of his termination. The court denied Brewer's request for reinstatement.

On appeal, Parkman contends that (1) the district court erred in finding that Brewer did not waive his right to a hearing; and (2) the district court erred in awarding back pay for a due process violation, absent a

* Of the Second Circuit, sitting by designation.

finding that Brewer would not have been terminated if a hearing had been held.

For the reasons that follow, we affirm the judgment of the district court.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

On December 29, 1987, Brewer filed a complaint in the Eastern District of Arkansas pursuant to 42 U.S.C. § 1983 (1988) alleging that he was terminated from his position as Deputy Sheriff of St. Francis County in violation of his due process and first amendment rights after he refused requests by Parkman and County Judge Carl Cisco to give false evidence against his boss, Sheriff Collidge Conlee. The complaint named as defendants Parkman, Judge Cisco, the members of the St. Francis County Quorum Court (the local legislative body), and St. Francis County. Brewer sought reinstatement with back pay, and compensatory and punitive damages.

A bench trial was held on May 8, 1989. Brewer's case consisted of his own testimony. Parkman and Judge Cisco both testified for defendants.

Brewer was hired in January 1977 as a Deputy Sheriff of St. Francis County. He held that position for almost 10 years. During his tenure, he served under three different sheriffs. Collidge Conlee was the last Sheriff under whom Brewer served.

In November 1986, an election was scheduled. Parkman was challenging the incumbent, Collidge Conlee, for the position of Sheriff of St. Francis County. Brewer testified that prior to the election, he was approached by Judge Cisco who told him that Conlee was going to lose the election. Judge Cisco threatened retaliatory measures if Brewer did not reveal information about Conlee. Brewer was given a couple of weeks to respond. In a couple of weeks, Judge Cisco called Brewer and requested that they meet in Judge Cisco's office. At that meeting, Judge Cisco again implied that Brewer would lose his job if he did not reveal information that reflected negatively on Conlee. Judge Cisco told Brewer that Parkman wanted to meet with him. Subsequently, Parkman won the election and became Sheriff-elect of St. Francis County.

On December 19, 1986, Parkman sent Brewer a letter, notifying him that he was being terminated effective January 1, 1987, the date that Parkman was scheduled to take office. At the time of his termination, Brewer was earning $493 every two weeks. Brewer's employment relationship with St. Francis County was governed by the St. Francis County Employment Policies and Procedures ("Policies and Procedures"), which were promulgated by Judge Cisco. The Policies and Procedures gave Brewer the right to appeal his termination. On December 22, 1986, Brewer requested an appeal.

After he received the letter that notified him of his pending termination, Brewer met with Parkman at Parkman's home. Parkman had been terminated by Conlee in a previous job. At the meeting, Parkman asked Brewer if he knew anything about Conlee. Brewer replied that he did not have any information about Conlee. Parkman stated that he would take Brewer's employment under advisement. At trial, Parkman denied that he indicated to Brewer that he would not be terminated if he furnished information about Conlee.

On February 10, 1987, Brewer's attorney wrote a letter to Parkman's attorney requesting a hearing and clarification of the reasons for Brewer's termination. Subsequently, a meeting was held at the office of Judge Cisco, who also was the personnel coordinator for the County. Present at that meeting were Brewer's attorney, Parkman's attorney, Parkman, and Judge Cisco. At that meeting, counsel was advised that Brewer was terminated because he had distributed campaign literature in violation of Arkansas law and because he did not reside in St. Francis County as required. Judge Cisco testified that as a result of that meeting "it wasn't necessary to go any further with any hearing or anything because we were going to end up in court anyway."

On February 13, 1987, Parkman wrote a letter to Brewer's attorney that reiterated the reasons for Brewer's termination. In addition, the letter contained a list of witnesses who would testify at an administrative hearing. This was the first indication Brewer received of the reasons for his termination. The letter also referred to Brewer's request for a hearing. On March 23, 1987, Brewer's attorney renewed his request for a hearing in a letter to Parkman's attorney. No such hearing was ever held.

At the close of Brewer's case, the district court granted a motion to dismiss the allegations against Judge Cisco and the members of the St. Francis County Quorum Court. The court further determined that the only issue that had to be decided was whether Brewer was entitled to a hearing in conformity with procedural due process and, if so, whether he received it.

On May 9, 1989, the court filed findings of fact and conclusions of law. The court found that Brewer was a permanent employee and that he had a property interest in continued employment as Deputy Sheriff that was created by the Policies and Procedures. The court further held that Brewer did not waive his right to a hearing and that the failure to grant him one constituted a violation of due process. In a judgment entered the same day, the court ordered that Brewer be granted a hearing and awarded him back pay in the amount of $1,500. On June 1, 1989, the court amended its judgment to award Brewer back pay in the amount of $6,897. Brewer moved to amend the judgment on June 9, 1989, requesting that the court order reinstatement. The court denied that motion and entered final judgment on October 30, 1989.

This appeal followed.

## II.

Initially, we must determine whether Brewer had a property interest in his employment protected by the due process clause of the fourteenth amendment. We look to state law to determine whether Brewer had a property interest in continued state employment. *Bishop v. Wood,* 426 U.S. 341, 344 (1976). Specifically, we must determine whether, under Arkansas law, the Policies and Procedures created for Brewer a legitimate expectation of continued employment as Deputy Sheriff.

The existence of a grievance procedure does not itself create a property interest in continued employment. *Stow v. Cochran,* 819 F.2d 864, 866–67 (8th Cir. 1987); *Hogue v. Clinton,* 791 F.2d 1318, 1324 (8th Cir.), *cert. denied,* 479 U.S. 1008 (1986). The grievance procedure must create an expectancy of continued employment, not merely an expectancy of review of termination. *Stow, supra,* 819 F.2d at 867; *Hogue, supra,* 791 F.2d at 1324. Moreover, under Arkansas law, an employment contract is terminable at will unless it expressly states that the employee may be terminated only for cause or for specified reasons. *Gladden v. Arkansas Children's Hosp.,* 292 Ark. 130, 136 (1987). Thus, an Arkansas state employee has a legitimate expectation of continued employment that implicates the due process clause if his contract is for a term of years that has not yet run, or if it expressly states that he may be terminated only for cause. *Drake v. Scott,* 823 F.2d 239, 241–42 (8th Cir.), *cert. denied,* 484 U.S. 965 (1987).

In the instant case, unlike the situations we were presented with in *Stow* and *Hogue,* the Policies and Procedures sufficiently constrain the county's discretion in terminating an employee. Moreover, unlike the regulation involved in *Drake,* which merely stated that employment was contingent on satisfactory performance, Article VII, Section A, of the Policies and Procedures involved in the instant case states that "the tenure of an employee with permanent status *shall* continue during good behavior and the satisfactory performance of his duties." (emphasis added). We construe that provision as creating an express agreement that county employees will not be terminated except for cause as listed in Section C of Article VII of the Policies and Procedures. Brewer had an expectation of continued employment as Deputy Sheriff and, there-

fore, a property interest protected by the fourteenth amendment. Due process requires that an employee who has a property interest in continued employment be given a hearing prior to his termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

We hold that Brewer had a property interest in continued employment as Deputy Sheriff that entitled him to a pre-termination hearing.

### III.

■ We turn now to Parkman's contention that the district court erred in finding that Brewer did not waive his right to a hearing. Parkman contends that the evidence indicated that Brewer waived his right to a hearing through his attorney at the meeting held at Judge Cisco's office. We find no error in the court's determination that there was no waiver.

We will uphold the district court's findings of fact unless they are clearly erroneous. Fed.R.Civ.P. 52(a). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985).

Appellant relies on Judge Cisco's testimony that after the meeting at his office no hearing was necessary since the dispute was going to be litigated anyway. That contention is belied by other evidence. For example, a letter written to Brewer's attorney by Parkman soon after the meeting at Judge Cisco's office refers to setting a date for a hearing. Moreover, on March 23, 1987, more than a month after the meeting at Judge Cisco's office, Brewer's attorney wrote a letter to Parkman's attorney inquiring about a date for a hearing.

We hold that the district court's determination that Brewer did not waive his right to a hearing was not clearly erroneous.

### IV.

This brings us to Parkman's contention that the district court erred in awarding back pay to Brewer. Parkman contends that an award of back pay for a due process violation can be made only upon a finding that Brewer would not have been terminated had a hearing been held. We disagree.

### (A)

In *Carey v. Piphus*, 435 U.S. 247 (1978), the Supreme Court considered the remedy due students who were suspended from school in violation of their due process rights. The Court held that "[b]ecause the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed ... the denial of due process should be actionable for nominal damages without proof of actual injury." *Id.* at 266 (citations omitted).

The Court, however, held that a person deprived of his procedural due process rights may collect compensatory damages only for injuries actually caused by the procedural deprivation. *Id.* at 264 Therefore, on remand, if the district court determined that the students would have been suspended even if they had been granted a hearing, they would not be entitled to damages for injuries caused by the suspensions. *Id.* at 260 The Court reasoned that, if the suspensions actually were justified, they were not caused by the procedural violation. *Id.* Thus, after *Carey*, a litigant denied due process was entitled to seek nominal damages for the deprivation of his procedural rights, *id.* at 266 compensatory damages, if any, actually caused by the deprivation of his procedural rights, *id.* at 264 attorney's fees in a § 1983 case, *id.* at 257 n. 11 and "punitive damages, to deter or punish malicious deprivations of rights." *Id.* at 266

In the wake of *Carey*, we held that public employees who were terminated in violation of their due process rights could recov-

er back pay only if they proved that they would not have been terminated if a proper hearing had been held. *Okeson v. Tolley School Dist. No. 25,* 760 F.2d 864, 869 (8th Cir.), *rev'd on other grounds,* 766 F.2d 378 (8th Cir.1985); *Pollock v. Baxter Manor Nursing Home,* 716 F.2d 545, 547 (8th Cir. 1983) (per curiam); *Bishop v. Tice,* 622 F.2d 349, 357 n. 17 (8th Cir.1980); *see also City of Ann Arbor v. Department of Labor,* 733 F.2d 429, 431–32 (6th Cir.1984) (back pay as remedy for dismissal in violation of due process warranted only if employee would not have been dismissed if hearing had been held); *New York Urban Coalition v. Department of Labor,* 731 F.2d 1024, 1030–31 (2d Cir.1984) (same); *County of Monroe v. Department of Labor,* 690 F.2d 1359, 1362 (11th Cir.1982) (same); *Wilson v. Taylor,* 658 F.2d 1021, 1032–33 (5th Cir.1981) (same).

Subsequently, in *Cleveland Bd. of Educ. v. Loudermill, supra,* the Supreme Court held that a public employee who had a property interest in continued employment, was entitled to a hearing prior to termination. *Id.* 470 U.S. at 542 The Court stated that, if circumstances existed that made it difficult to retain an employee until a hearing was held, the proper solution would be to suspend the employee with pay. *Id.* at 545 The *Loudermill* Court did not set forth the proper remedy for a public employee who was terminated without a pre-termination hearing, but arguably it impacted on that determination. *Cf. Hogue, supra,* 791 F.2d at 1328 n. 7 (Lay, C.J., concurring in part, dissenting in part) (the *Okeson* case might have been decided differently if the panel had considered *Loudermill*).

Today, we consider the impact of *Loudermill* on the application of *Carey* in the context of the proper remedy for public employees who are terminated without due process.

**(B)**

Parkman relies on *Bishop v. Tice,* 622 F.2d 349, 357 n. 17 (8th Cir.1980), and *Rogers v. Kelly,* 866 F.2d 997, 999–1000 (8th Cir.1989), for the proposition that back pay

may be awarded only if a court determines that an employee was unjustly terminated. Parkman's reliance is misplaced.

*Bishop* was decided prior to the Supreme Court's decision in *Loudermill.* Although *Rogers* was decided after *Loudermill,* we do not believe that it governs our decision in the instant case. *Rogers* does not explicitly address the issue of *Loudermill's* impact on the appropriate remedy for a public employee terminated without due process. Other post-*Loudermill* cases in which we have denied back pay similarly do not explicitly take *Loudermill* into account. *Peery v. Brakke,* 826 F.2d 740, 747 (8th Cir.1987); *Hogue, supra,* 791 F.2d at 1323; *see also Fraternal Order of Police, Lodge No. 5 v. Tucker,* 868 F.2d 74, 81 (3d Cir. 1989) (nominal damages should be awarded absent finding that employee would not have been terminated had hearing been held); *Simien v. City of San Antonio,* 809 F.2d 255, 258 (5th Cir.1987) (back pay not proper remedy for due process violation if public employee's termination was justified); *Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251, 1265 (7th Cir.1985) (nominal damages awarded for due process violation since public employee would have been terminated even if due process right was not violated). Moreover, *Rogers* stands for the proposition that "[s]ubstantial compensatory damages ... may be awarded only to compensate actual injury caused by the denial of procedural due process; damages cannot be presumed to flow from every deprivation of procedural due process." *Rogers, supra,* 866 F.2d at 1000. We do not quarrel with that proposition. Since the district court here granted equitable relief tailored to vindicate Brewer's right to a hearing under *Loudermill,* rather than compensatory damages, we do not believe the instant case is governed by *Rogers.*

■ We hold that a court, consistently with *Carey* and *Loudermill,* may order that a hearing be held as a remedy for a public employee terminated in violation of due process. Ancillary to that relief, a court may order the equitable relief of back pay from the date of termination and rein-

statement until such time as a hearing is held. *Cf. Skeets v. Johnson,* 805 F.2d 767, 774–75 (8th Cir.1986) (upholding award of back pay, absent determination that employee would not have been terminated had hearing been held), *rev'd on other grounds,* 816 F.2d 1213 (8th Cir.1987) (en banc); *Irizarry v. Cleveland Pub. Library,* 727 F.Supp. 357, 362–65 (N.D.Ohio 1989) (same). A court ordering such relief need make no determination as to the propriety of a public employee's termination since "the right to a hearing does not depend on a demonstration of certain success." *Loudermill, supra,* 470 U.S. at 544.

■ In the instant case, the district court made no determination as to the propriety of Brewer's discharge. The court ordered that Brewer be granted a hearing in connection with his termination and ordered that he receive back pay from the date of his termination until such a hearing is held. Such a remedy merely vindicates the right to which Brewer is entitled under *Loudermill.*

> "The unequivocal message of *Loudermill* is that due process 'requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his [or her] employment.' This rule clearly imposes on public employers an obligation to retain an employee on the payroll until a pretermination hearing satisfying the *Loudermill* notice and hearing requirement is conducted."

*Hogue, supra,* 791 F.2d at 1328 (Lay, C.J., concurring in part, dissenting in part) (citations omitted).

A "public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill, supra,* 470 U.S. at 546 A hearing prior to termination is essential since "the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Loudermill, supra,* at 532 An employee will never have that opportunity if the court makes a decision as to whether the employee was properly terminated for cause in the first instance. Moreover, courts are not in the best position to make the first determination as to the justification for an employee's termination. "Courts in [procedural due process] cases should be interpreters of the Constitution, and not arbiters of every employment decision.... Courts do not have the time, the expertise or the authority to take on comprehensive roles as employment decision makers." *Shaw v. Gwatney,* 604 F.Supp. 880, 887 (E.D.Ark.1985), *aff'd in part, vacated in part,* 795 F.2d 1351 (8th Cir.1986); *see also* Beermann, *Government Official Torts and the Takings Clause: Federalism and State Sovereign Immunity,* 68 B.U.L.Rev. 277, 322 n. 185 (1988) (ordering a hearing and awarding back pay as a remedy for a procedural due process violation "would serve three purposes: first, it would vindicate the due process interest in a fair hearing; second, it would keep the federal court out of the state law decision-making process by allowing the state tribunal to decide whether the planned action, such as firing or suspension from school, is appropriate; third, it would give parties with no actual damages under a tort compensation scheme an incentive to vindicate their federal rights—the prospect of the hearing, backpay, and the attorneys' fees award predicated on the injunction would make the litigation worthwhile").

The relief ordered by the district court here effectuates the purpose of *Loudermill* and also is consistent with *Carey.* Nothing in *Carey* precludes a court from awarding equitable relief to remedy a due process violation. Indeed, in *Carey* the suspended students both were granted injunctive relief, readmitting them to school. *Carey, supra,* 435 U.S. at 250–51. Awarding equitable relief in the form of back pay and reinstatement until a hearing is held restores the status quo ante. "With respect to due process actions, equitable relief is intended not to make a person whole but to restore the situation to what it was before the act. In other words, equitable relief is directly intended to invalidate the illegal government action and restore the

status quo ante." *Shaw, supra,* 604 F.Supp. at 887.

We are aware that back pay sometimes is considered in the nature of legal damages, rather than in the nature of equitable damages. *Setser v. Novack Inv. Co.,* 638 F.2d 1137, 1142 (8th Cir.), *vacated in part,* 657 F.2d 962 (8th Cir.) (en banc), *cert. denied,* 454 U.S. 1064 (1981). In the instant case, Brewer sought back pay and reinstatement as well as compensatory and punitive damages. We construe the relief sought and granted as equitable in nature. The district court did not attempt to compensate Brewer for the violation of his due process rights, but rather attempted to restore Brewer to the position in which he would have been absent the violation of his procedural due process rights.

An award of compensatory damages to Brewer would have been governed by *Carey.* Thus, damages for Brewer's emotional distress associated with his termination as opposed to the procedural violation, and reimbursement for his expenses incurred in seeking re-employment, would not have been compensable absent a finding that Brewer was unjustly terminated.

Finally, it is not clear why the district court refused to order reinstatement absent a determination of whether there was cause to terminate. Although the propriety of a public employee's termination is relevant as to whether that employee ultimately keeps his job, it is not relevant as to whether that employee is entitled to maintain his position until a pre-termination hearing is held. The relevant inquiry is whether there is "a significant hazard in [reinstating] the employee," or whether it is otherwise not feasible to order reinstatement. *Loudermill, supra,* 470 U.S. at 544–45. In any event, the relief ordered by the district court, in effect, put Brewer in a position as if he had been suspended with pay. That is consistent with *Loudermill. Id.*

V.

To summarize:

We hold that Brewer had a legitimate expectation of continued employment as Deputy Sheriff of St. Francis County, Arkansas, which entitled him to a pre-termination hearing. We further hold that the district court's finding that Brewer did not waive his right to a hearing was not clearly erroneous. Finally, we hold that the district court did not err in ordering that Brewer be granted a hearing and awarding Brewer back pay without first determining that Brewer would not have been fired had a hearing been held.

Affirmed.