John BAUM, Dwayne Halcom, Carole Hanes, Sandra Mann, Tammy Mead and Lorene Wilson, Plaintiffs,

v.

Sheriff Ron WEBB, Individually and in his official capacity of Sheriff of Independence County, Arkansas; Mike Branscum, Bill Cash, Robert Cuzzort, James Darmstaedter, Max Edwards, Don Fox, Bobby Galloway, Conway Lawrence, Jean Pankey, Joe Walls, and Tom Ed Woodruff, in their official capacities as members of the Quorum Court of Independence County, Arkansas; and David Wyatt, in his official capacity as County Judge of Independence County, Arkansas, Defendants.

No. B-C-93-053.

United States District Court,
E.D. Arkansas,
Northern Division.

Sept. 30, 1994.

Thomas H. McGowan, James P. O'Connor, Youngdahl & Sadin, L.L.P., Amy Adelle Blackwood–Bendoski, McLeod Law Firm, Little Rock, AR, for plaintiffs.

Michael R. Rainwater, Duncan & Rainwater, Little Rock, AR, for defendants.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

This suit was filed October 26, 1993, by six former employees of the Independence County Sheriff's office. The complaint alleged the same grounds against Sheriff Ron Webb, the County Judge David Wyatt, and members of the Independence County Quorum Court, who are the governing county legislative body under Arkansas law. The complaint states that it is brought to remedy "the unconstitutional termination of the employment of plaintiffs by defendants." The crux of the complaint is in paragraph (5) which states as follows: "Defendant Webb unconstitutionally terminated the employment of plaintiffs because of their political beliefs and because of the exercise of their First Amendment rights." The other defendants all allegedly concurred in the sheriff's action. In paragraph (6) of the complaint, it is alleged as follows: "Defendants failed to provide a pre-termination hearing to plaintiffs, and the post-termination hearing then provided on January 28, 1993, itself violated procedural due process requirements."

Notwithstanding the inclusion of all six plaintiffs in a single complaint and blanket and identical allegations made with respect to each of the plaintiffs, actually these are six different claims, and each plaintiff's claim has a markedly different factual and legal basis. Plaintiffs' counsel has recognized this distinction by making the following announcement during the trial:

(1) Only Lorene Wilson and Sandra Mann are asserting First Amendment claims, i.e., that they were discharged for political activity on behalf of a co-worker in the sheriff's office, Bill Lindsey, who was Ron Webb's unsuccessful opponent in the 1992 election;

(2) The only claim of Dwayne Halcom and John Baum is that they were denied procedural due process in that they were not given a pre-termination hearing;

(3) All of the six employees are claiming a violation of the terms of their contracts of hire which incorporates by implication the terms of the "Independence County Personnel Policies and Procedures—Employees Handbook (Effective January 1, 1988)." This handbook gives all employees the right to a grievance hearing. It further provides as follows under Section V(D):

(D) Any discipline or dismissal, resulting in removal or reduction of pay or position, shall be a suspension with pay for three business days or, if an Employee Grievance Hearing is timely requested, until the day the County Grievance Committee renders its decision.

The six employees applied for and were given a grievance hearing before the County Grievance Committee. However, the committee did not render its written decision until January 5, 1994, more than a year after plaintiffs' termination and fifty (50) weeks after the grievance hearings. Under the above contract provisions, all plaintiffs claim that they are entitled to pay for this time. Although four of the plaintiffs assert Federal constitutional claims, the remaining plaintiffs, Carole Hanes and Tammy Mead, assert only claims under Section V(D), *supra.*

■ Because defendants have asserted a defense that, if well taken, is dispositive of all claims, it will be addressed initially. Defendants have moved for judgment as a matter of law on the theory that "... Plaintiffs' employment expired on December 31, 1992 [the day before defendant Sheriff Webb took office], by operation of law.... Even if Sheriff Webb had considered politics in assessing who to hire/commission for his administration, the Sheriff had no affirmative obligation to hire the plaintiffs.... The Defendants could not have violated Plaintiffs' Fourteenth Amendment Due Process rights because Plaintiffs' employment was terminated by operation of law." (Defendants' Brief

in Support of Motion for Summary Judgment, at 16.) Defendants reason that because, in Arkansas, sheriffs are elected for only a two-year term, the employment contracts of their employees end, by operation of law, every two years. Because the plaintiffs were not ever recommissioned, the argument goes, then they were not employees on January 1, 1993, when Sheriff Webb took office, and thus could not have been subjected to unlawful employment practices by him. The defendants contend that Sheriff Webb did not, and could not have, taken *any* employment action as to the plaintiffs because they were never his employees. The Court must reject this circular reasoning.

The defendants' understanding of employment law would, in effect, create a class of public employees with even fewer rights and protections than those of "at will" employees, who can be fired for any reason or no reason, but not for legally impermissible reasons such as race or exercise of First Amendment rights.

The Supreme Court of the United States does not recognize the defendants' proposed distinction between "firing" and "failure to recommission." To the contrary, the Supreme Court, in a case involving employees in the Sheriff's office in Cook County, Illinois, has forcefully protected the rights of public employees to exercise First Amendment freedoms without fear of adverse employment decisions, except in cases where the position is that of "policymaker" or "confidential employee".

> Regardless of the nature of the inducement, whether it be by the *denial of public employment* or ... by the influence of a teacher over student, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Id.* at 642.

*Elrod v. Burns,* 427 U.S. 347, 356, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976) (emphasis added).

In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court specifically commented on the employee's lack of right to re-employment:

> Thus, the [employee's] lack of a contractual or tenure "right" to re-employment for the 1969–70 academic year is immaterial to his free speech claim. Indeed, twice before, this Court has specifically held that the non-renewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights. *Shelton v. Tucker,* [364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231]; *Keyishian v. Board of Regents,* [385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)]. We reaffirm those holdings here.

*Id.* at 597–598, 92 S.Ct. at 2697.

■ In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court noted: "[I]t is difficult to formulate any justification for tying either the *selection or retention* of an assistant public defender to his party affiliation." *Id.* at 520 n. 14, 100 S.Ct. at 1297 n. 14 (emphasis added). In a more recent decision, the Supreme Court squarely held:

> Under our sustained precedent, conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so.

*Rutan v. Republican Party of Illinois,* 497 U.S. 62, 77–78, 110 S.Ct. 2729, 2739, 111 L.Ed.2d 52 (1990). Thus, the defendants' hypertechnical distinction between selection and retention is not well taken. An adverse employment decision motivated by exercise of protected First Amendment activity is impermissible. See, also, *Brewer v. Parkman,* 918 F.2d 1336 (8th Cir.1990), reversed *sub nom, Brewer v. Chauvin,* 938 F.2d 860 (8th Cir.1991). This case involved the failure to recommission Deputy Sheriff Brewer at the end of the previous sheriff's term. Brewer did not succeed in retaining his position for reasons set forth, *infra.* However, the Court found no impediment to a consideration of Brewer's case in the fact that his commission had expired.

■ Before taking up the individual claims, we will also address the claim of all

plaintiffs for fifty (50) weeks of pay under V(D) of the Employee Handbook because of the long delay in disposing of the grievances. Indeed, this is the only claim of plaintiffs Carole Hanes and Tammy Mead. This Court cannot give plaintiffs relief under Section V(D), which does not involve a United States Constitutional violation that may be asserted under 42 U.S.C. § 1983. While a pendant state claim might have been asserted in the complaint, none so appears nor was a request made during trial for an amendment to encompass a pendant state claim. It follows that the claims of Carole Hanes and Tammy Mead must be denied and dismissed without prejudice. Parenthetically, it may be stated that Sheriff Webb articulated justifiable reasons for failing to retain these at-will employees. We do not reach the putative state claim under V(D) of the Employee Handbook.

*The Claim of John Baum:*

■ John Baum had continuous service with the Sheriff's department since November 15, 1983. His only claim is that he was denied procedural due process by not being afforded a pre-termination hearing. Baum had a property interest in his job with the Criminal Investigation Division (CID). By establishing that he was not given such a hearing, Baum has shifted to Sheriff Webb the burden of proving, by a preponderance of the evidence, that the termination would have occurred even if an appropriate pre-termination hearing had been held. This is the clear and explicit holding in an *en banc* decision of the Court of Appeals in *Brewer v. Chauvin,* 938 F.2d 860 (8th Cir.1991), a case strikingly similar to the case at bar. Deputy Sheriff Bennie Brewer of St. Francis County, Arkansas, had been employed for ten (10) years by several sheriffs and, thus, had the same length and type of service as Baum. Both had gone to work under an employee handbook with similar provisions. See *Brewer v. Parkman,* 918 F.2d 1336 (8th Cir.1990). Both had a property interest in their jobs and both were *prima facie* entitled to procedural due process, i.e., a pre-termination hearing before discharge. Both Baum and Brewer were terminated after a new sheriff was elected. The district court held that

Brewer was entitled to a pre-termination hearing and back pay, since he had not been given one. This decision was affirmed by a panel of the Court of Appeals for the Eighth Circuit. *Brewer v. Parkman, supra.* The court granted *en banc* review, vacated the decision of the trial court and the panel, and reversed. The following language controls this court's decision with regard to Baum:

> Finally, we hold that the public employer carries the burden of proving that the plaintiff would have been fired even if procedural due process had been observed. Having deprived an employee of a property interest in his job without first satisfying the requirements of procedural due process, the employer must show by a preponderance of the evidence that the discharge would have occurred even if an appropriate pre-termination hearing had been held.... (938 F.2d 860, 864)

■ Has Sheriff Webb sustained his burden? Clearly, he has done so. On November 20, 1992, he wrote Baum a termination letter (Plaintiffs' Exhibit 24). The letter stated *inter alia:* "As the Sheriff–Elect, I have reviewed personnel within the Sheriff's department. I feel at this time I will be unable to place you in my administration.... There are many factors I used in coming to this conclusion ..." In trial, Sheriff Webb expanded on these factors. As circuit clerk for eight years, he had had an opportunity to observe Baum, who was a major figure in the Criminal Investigation Division of the Sheriff's office. He thought that Baum had contributed to important deficiencies in this division, which had resulted in high profile cases being lost. The performance of this division was a major issue in the campaign because his opponent was also a criminal investigator in this department. Webb had promised a major shakeup, and Baum was a principal target. Hence, he sent the letter mentioned above.

At trial, Webb introduced a copy of a motion filed in the Circuit Court of Independence County by the prosecuting attorney (Defendants' Exhibit 18). The motion was denominated a "Motion to Decline Prosecution" and was granted by the Circuit Judge.

The motion dealt with a murder investigation of one William T. Reager, a suspect in the death of one Della Harding. The motion is replete with charges of mishandling of the investigation by Baum, as well as more serious charges that Baum deliberately misstated the facts to the prosecutor. Whether or not the charges were true, they constituted a justifiable reason for not retaining Baum.

The Sheriff also introduced a transcript of an arrest of a man named Tim Osborne in which Baum was a major participant. In the process of this arrest, Baum used a succession of blatantly racist remarks, which appear at length in the transcript (Defendants' Exhibit 17). Sheriff Webb also claimed that Baum had mishandled the murder case involving Susan Jernigan, with the result that she was eventually freed after spending more than a year in jail. Sheriff Webb introduced an Order of Circuit Judge John Dan Kemp, which he claims indicates that Baum's performance in that case was less than adequate (Defendants' Exhibit 20). Baum admitted on the stand that he had a "toilet mouth." The language he used in the Osborne and Jernigan investigations substantiates this statement.

Sheriff Webb stated that as circuit clerk he had observed the progress of all these cases, and had concluded that he did not want Baum as an employee. He also stated that Baum's conduct, as well as that of the CID, was the subject of criticism in the local press and from the general public. Under the *en banc* holding of the Court of Appeals in *Brewer v. Chauvin, supra,* Sheriff Webb has carried "the burden of proving the plaintiff would have been fired even if procedural due process had been observed." (938 F.2d at 864.) The claim of John Baum is, therefore, denied and dismissed.

*The Claim of Dwayne Halcom:*

Dwayne Halcom was hired on July 1, 1985. He headed the patrol division. What was said about John Baum is equally applicable to this plaintiff. He was written the identical letter received by John Baum, the pertinent provisions of which were set out, *supra* (Plaintiffs' Exhibit 24). It is obvious that Sheriff Webb intended to fire him regardless of his right to a pre-termination hearing.

The rule of *Brewer v. Chauvin, supra,* applies equally to Halcom.

In the trial, Webb articulated his reasons for dispensing with this deputy's services. The performance of the patrol division was also an issue in the campaign. Halcom's subordinates could not get along with him and did not like him. The state police officers who were required to work with him made critical remarks about his performance to Webb. Halcom, along with Baum, was involved in the arrest of Tim Osborne. Webb was critical of this arrest. As in the case of John Baum, Sheriff Webb carried "the burden of proving that the plaintiff would have been fired even if procedural due process had been observed." (938 F.2d at 864.) Sheriff Webb had made up his mind that he did not want this man on his staff. Nothing brought out in a pre-termination hearing would have changed it.

*The Claim of Sandra Mann:*

Sandra Mann entered on duty on April 12, 1983. At the time of her termination, she was working in the Criminal Investigation Division (CID). She received the same termination letter that Webb sent to Baum and Halcom (Plaintiffs' Exhibit 24). As mentioned above, the performance of this division was an issue in the campaign for Sheriff. Ms. Mann had participated in one or more of the high profile cases, which in Webb's opinion had been mishandled and had brought much press and public criticism on this division. Defendants also introduced proof that Ms. Mann had violated the Employee Handbook provision on political activity by soliciting and obtaining a political contribution from Dennis Davis, a pawn shop owner. Mr. Davis testified that she came to his pawn shop in uniform with a sidearm during daytime hours and asked for the donation. Davis said that it was important for him to maintain good relations with the Sheriff's office because of the nature of his business. He testified that plaintiff gave every appearance of being on duty. As soon as plaintiff left his pawn shop with a $100 donation, Davis called Webb and told him about the contribution he had made to his opponent's campaign. However, Davis told Webb that

he would also contribute to Webb's campaign.

 Plaintiff denied that she solicited funds for Bill Lindsey's campaign while she was on duty. She admitted raising money for him and campaigning by word of mouth and states that this is the reason for discharge. In other words, she avers that her termination resulted from the exercise of her First Amendment rights. While her political activity may have had some influence on Webb's decision to terminate her, I find that the evidence preponderates in favor of another factor. I find that the principal motivating factor was Webb's perception that her work in the CID was unsatisfactory. This had been a campaign issue, and he had promised to shape up this division, where she worked with Baum and Halcom and also with Bill Lindsey, Sheriff Webb's opponent. He denied firing her for her political activity, but stated he believed that she had violated the county's personnel policy by soliciting political funds while on duty.

*The Claim of Lorene Wilson:*

Mrs. Lorene Wilson began working as a jail matron on May 10, 1983. She was not a supervisor nor was she involved in policy. She was active in the campaign of Sheriff Webb's opponent. She ran signed advertisements in the newspaper on his behalf. She and her husband paid for television ads on behalf of Webb's opponent. Based on the testimony and the exhibits in this case, I am convinced that the motivating factor in the termination of Mrs. Wilson was her political activity on behalf of Webb's opponent. Thus, there was a clear violation of her First Amendment rights. Webb has added no plausible testimony in rebuttal. He says that she repeatedly questioned him as to whether she would keep her job and this made him angry. He also contends that he was not satisfied with the operation of the jail. As mentioned above, she had little responsibility for the operation of the jail. She was a lower tier employee. Of all the plaintiffs, Mrs. Wilson was the most active in campaigning for Webb's opponent; it is obvious that Webb resented this activity and terminated her because of it.

Plaintiff Wilson is entitled to reinstatement in her position at the jail, along with back pay from December 31, 1993, until such reinstatement is effective. The back pay award is to be credited with any earnings during this period. No further damages are awarded to her. Judgment will be entered on her behalf in this amount.