Michael E. HUBBARD, Appellant,

v.

ADMINISTRATOR, ENVIRONMENTAL
PROTECTION AGENCY, Appellee.

Michael E. HUBBARD, Appellee,

v.

ENVIRONMENTAL PROTECTION
AGENCY, Appellant.

Nos. 90–5233, 90–5250.

United States Court of Appeals,
District of Columbia Circuit.

Argued En Banc Sept. 30, 1992.

Decided Nov. 27, 1992.

Peter B. Broida, Arlington, VA, with
whom Timothy Haake, Washington, DC,
was on the brief, for appellant/cross-appel-
lee Michael E. Hubbard.

John D. Bates, Asst. U.S. Atty., with
whom Jay B. Stephens, U.S. Atty., R. Craig
Lawrence, and Mark E. Nagle, Asst. U.S.
Attys., Washington, DC, were on the brief,
for appellee/cross-appellant E.P.A.

Before MIKVA, Chief Judge, WALD,
EDWARDS, RUTH BADER GINSBURG,
SILBERMAN, BUCKLEY, WILLIAMS,
D.H. GINSBURG, SENTELLE,
HENDERSON, and RANDOLPH, Circuit
Judges.

Opinion for the Court filed by Circuit
Judge WALD.

Concurring opinion filed by Circuit Judge
RANDOLPH, with whom Circuit Judge
RUTH BADER GINSBURG joins.

Dissenting opinion filed by Circuit Judge
EDWARDS, with whom Chief Judge
MIKVA joins.

WALD, Circuit Judge:

This case presents a straightforward, but
nonetheless hard, question of law: Has the
United States waived sovereign immunity
for a back pay award to an individual de-
nied federal employment in violation of his
constitutional rights? A panel of this court
answered "yes" to that question, finding
that 5 U.S.C. § 702's waiver of sovereign
immunity for "relief other than money
damages" encompasses back pay. On re-

visiting this issue *en banc,* we find no clear evidence from the language of the statute, its legislative history, or the case law that § 702 waives sovereign immunity for back pay. We thus affirm the district court's decision that Michael Hubbard may not receive back pay as part of a remedy for the Environmental Protection Agency's ("EPA") refusal to hire him in violation of his First Amendment rights.

## I. BACKGROUND

Michael Hubbard's dispute with the EPA has dragged on for more than a decade. A "frequent flyer" with this court, the facts of Hubbard's conflict with the EPA are chronicled in several prior opinions. *See Hubbard v. EPA,* 949 F.2d 453, 455–56 (D.C.Cir.1991), *reh'g en banc granted in part, denied in part,* 949 F.2d 475 (D.C.Cir.1992); *Hubbard v. EPA,* 809 F.2d 1, 2–4 (D.C.Cir.1986), *aff'd en banc sub nom. Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir.1988) *(per curiam ).* We highlight only the most salient details here.

In 1982, Hubbard applied to be an investigator with the Criminal Investigations Division of the EPA. The EPA turned him down because of reports that, while serving as a police investigator, he improperly divulged information to the press about his probe of drug trafficking by members of Congress and their aides. A unanimous panel of this court, applying the balancing test of *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), affirmed the district court's finding that the EPA's failure to hire Hubbard violated his First Amendment rights and that Hubbard was entitled to be instated as an EPA investigator.[1] *See Hubbard,* 949

F.2d at 461. That determination is not contested here.

What *is* at issue is the panel's further holding that Hubbard was entitled to receive back pay along with instatement as part of an equitable remedy. *See id.* at 462. Relying mainly on language in the Supreme Court's decision in *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), and on other cases that have categorized back pay as equitable relief, a split panel concluded that back pay fell within the waiver of immunity for "relief other than money damages" in 5 U.S.C. § 702,[2] enacted as part of the 1976 amendments to the Administrative Procedure Act ("APA"). *See Hubbard,* 949 F.2d at 462–69. The *en banc* court now finds that Hubbard may not receive back pay because Congress has not expressed an unequivocal intent to waive sovereign immunity for such relief.

## II. DISCUSSION

### A. *Principle of Construction*

The Supreme Court has counselled us repeatedly that waivers of sovereign immunity are to be construed strictly. *See, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986). We may not find a waiver unless Congress' intent is " 'unequivocally expressed' " in the relevant statute. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)). Thus, Hubbard faces an uphill fight. To prevail, he must demonstrate a "legislative intent ... so

---

1. In a prior appeal, this court found that Hubbard was not eligible to receive *Bivens* damages because the Civil Service Reform Act, Pub.L. No. 95–454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), provides meaningful remedies for this type of employment grievance, even though none of those remedies is actually available to Hubbard. *See Spagnola v. Mathis,* 859 F.2d 223, 228–29 (D.C.Cir.1988) *(en banc )* (per curiam).

2. Section 702 states in part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

clear and explicit as to brook no reasonable doubt." *In re Perry*, 882 F.2d 534, 544 (1st Cir.1989).

### B. *Section 702 and Its Legislative History*

After scouring § 702's text and legislative history,[3] we find no such clear evidence of an intent to waive sovereign immunity as to back pay. The text of § 702 is cryptic indeed, referring only to "relief other than money damages." The legislative history suggests to us, but does not ultimately compel the conclusion, that the waiver does not include back pay.

As the Supreme Court has emphasized, the legislative history of the 1976 amendments "indicat[es] that the drafters had in mind the time-honored distinction between damages and specific relief." *Bowen v. Massachusetts*, 487 U.S. 879, 897, 108 S.Ct. 2722, 2734, 101 L.Ed.2d 749 (1988); *see also* S.Rep. No. 996, 94th Cong., 2d Sess. 2 (1976) ("[The amendment] would eliminate the defense of sovereign immunity in Federal court actions for specific relief...."); H.R.Rep. No. 1656, 94th Cong., 2d Sess. 4 (1976) (same), U.S.Code Cong. & Admin.News 1976, p. 6124; *1970 Hearing*, at 58 ("[A]ll ... specific relief is covered....") (statement of Professor Cramton). While these categories are not sharp-edged, back pay for someone in Hubbard's position has traditionally been understood at common law as "damages," not "specific relief." *See* Dan B. Dobbs, Handbook on the Law of Remedies 924–27 (1973) (discussing back pay as a type of compensatory relief akin to damages) (hereinafter Dobbs on Remedies); *id.* at 69 n. 18; Arthur G. Sedgwick, A Treatise on the Measure of Damages § 665, at 1343 (9th ed. 1920) (dis-

cussing wages lost after wrongful discharge as a type of damages).

That conventional classification certainly makes sense in the context of this case. Specific remedies "attempt to give the plaintiff the very thing to which he was entitled." Dobbs on Remedies, at 135. At the time the EPA violated Hubbard's rights by denying him an offer of a job as a criminal investigator, he had never worked for the EPA and thus was not entitled to any pay. *Cf. United States v. Testan*, 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976) ("The claim [for back pay] ... is that each [plaintiff] has been denied the benefit of a position to which he should have been, but was not, appointed. The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it."). The only "entitlement" that the EPA deprived Hubbard of was the job offer he would have received except for the constitutional deprivation. Instatement is the specific relief for that deprivation; it gives Hubbard "the very thing" he was owed. On the other hand, any loss of income attributable to Hubbard's being denied the job, like any emotional distress or harm to reputation that he may have suffered as well, is a consequence of the denial of the offer of employment. And the classic remedy for that loss is money damages.[4] *See id.* at 404, 96 S.Ct. at 956 (describing a claim for back pay as one for "money damages"). That is why courts ordinarily award back pay only in the amount necessary to compensate the plaintiff for the loss that resulted from the unlawful deprivation of employment. "If [an] employee obtains other employment ..., he is ordinarily chargeable with the income from that employment, so that his damage claims against his former employer are reduced by what he makes in his new

---

3. The legislative history of § 702 consists of two committee reports and two sets of hearings. *See* H.R.Rep. No. 1656, 94th Cong., 2d Sess. (1976); S.Rep. No. 996, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin.News 1976, p. 6121; *Administrative Procedure Act Amendments of 1976: Hearings Before the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary*, 94th Cong., 2d Sess. (1976); *Sovereign Immunity: Hearing Before the Subcommittee on Administrative Practice and Procedure of the Senate*

*Committee on the Judiciary*, 91st Cong., 2d Sess. (1970) ("*1970 Hearing*").

4. We do not suggest that back pay must always be viewed as money damages and can never be properly categorized as specific relief. If Hubbard had been hired by the EPA and worked for the agency for a year without being paid, his legal claim might well be viewed differently. In that case, the money that Hubbard had a right to receive in exchange for his labor might well be the very thing that was taken from him.

job." DOBBS ON REMEDIES, at 925.[5] Thus, back pay essentially pays the plaintiff for the economic losses suffered as a result of the employer's wrong; it does not return to the plaintiff anything which was rightfully his in the first place.[6]

Reasoning from general, and on the edges often malleable, concepts of compensation and specific relief would of course be unnecessary if there were some real evidence that Congress meant back pay to be among the class of "non-money damages" remedies for which § 702 waived immunity.[7] But there is none. The statute and its legislative history never mention back pay.[8] That fact alone gives us pause; it is difficult to conclude that throughout the six-year long struggle to amend § 702 to include a waiver of government immunity, all factions understood that the provision would include back pay, but nobody bothered to say it out loud. Reliance on such an inference certainly does not square with the requirement that we find a clear and explicit legislative intent to waive sovereign immunity. It is also a questionable assumption in light of the potentially significant effect on the public fisc of waiving back pay immunity. Cf. S.REP. No. 996, at 19 ("The committee does not believe that enactment of [the proposed amendments], which [are] procedural in nature and clarif[y] the jurisdiction of the Federal courts while marginally expanding it, will require

---

5. Our dissenting colleagues argue that a court, exercising equitable discretion, may in appropriate cases reduce an equitable remedy to insure that a plaintiff is not put in a better position than he would have been in absent the unlawful action. See Dissent at 541–42. But they put the cart before the horse. In deciding whether back pay is appropriate in the first place, courts customarily look to see whether the plaintiff has obtained other work during the relevant period and indeed whether he has made efforts to do so. See DOBBS ON REMEDIES at 926. Thus, they do not deduct an amount from some preordained finite sum to take account of "compelling equitable considerations"; they ask first whether and how much the plaintiff has suffered economically from the wrong inflicted upon him.

6. The fungible character of money undoubtedly makes the conceptualization of back pay more difficult than compensation for intangibles such as loss of reputation. Nonetheless, the principle is the same. Hubbard is seeking money damages to compensate for the economic loss he suffered as a result of not getting the job.

7. Although the Supreme Court has said in *Bowen* that Congress drew a controlling distinction in § 702 between specific relief and damages, that instruction does not, of course, foreclose a supplementary inquiry into whether Congress also had a specific legislative intent to waive immunity for a particular type of relief not involved in *Bowen*.

8. This silence is probably explained by the fact that Congress had already dealt with the issue of back pay and had decided not to disturb the specific compromises it had made a decade earlier—and revisited just one year before the 1976 APA amendments, see Pub.L. No. 94–172, 81 Stat. 203—in the Back Pay Act, 5 U.S.C. § 5596. Earlier in 1976, the Supreme Court emphasized that the Back Pay Act waived sovereign immunity for back pay "in carefully limited circumstances." *United States v. Testan*, 424 U.S. 392, 404, 96 S.Ct. 948, 956, 47 L.Ed.2d 114 (1976). The Court also noted that where back pay immunity had not been specifically waived the Back Pay Act intended plaintiffs to rely exclusively on more limited relief. See id. at 403, 96 S.Ct. at 955–56. Both committee reports on § 702 imply that this earlier legislative judgment, as elaborated by the Supreme Court, would not be disturbed by the new legislation. Quoting then Assistant Attorney General Scalia, both state:

> Because existing statutes have been enacted against the backdrop of sovereign immunity, this will probably mean that in most if not all cases where statutory remedies already exist, these remedies will be exclusive; that is no distortion, but simply an accurate reflection of the legislative intent in these particular areas.... *It would be unwise to upset these specific determinations by a general provision of this sort, without considering them individually, or even knowing what they are.* In the many areas where Congress has not acted, however, and when its action is not addressed to the type of grievance which the plaintiff seeks to assert, suit would be allowed.

S.REP No. 996, at 27 (emphasis added); *accord* H.R.REP. No. 1656, at 27–28, U.S.Code Cong. & Admin.News 1976, pp. 6146, 6147. Congress had certainly "acted" in the area of back pay in federal employment, and provided relief for this "type of grievance"—although not Hubbard's specific grievance—by allowing some federal employees deprived of income in violation of any "law, rule, regulation, or collective bargaining agreement" to receive back pay. See 5 U.S.C. § 5596(b)(1). Extending that relief to people not covered by the Back Pay Act would allow a general provision to trump the specific statutory compromises that Congress had previously made, something that Congress was apparently not willing to do through § 702.

additional appropriation of funds to either the judiciary or the agencies.").

The closest pass that the legislative history makes to the back pay issue is a few references to "governmental employment" as among the categories of cases where relief had in the past been barred by sovereign immunity and which, in the future, might be remediable under the amendment. See, e.g., H.R.REP. No. 1656, at 9, U.S.Code Cong. & Admin.News 1976, p. 6129. But, of course, sovereign immunity had affected government employment cases in significant ways other than as a bar on back pay relief. Prior to the 1976 amendments, when a federal employee was not hired or was fired in violation of her rights, sovereign immunity had foreclosed an injunction instating or reinstating that employee—the very relief that Hubbard has now received in this case. In fact, the same House Report that refers to "governmental employment" cites a law review article that discusses how sovereign immunity had hampered effective enforcement of employment discrimination laws against the federal government. See H.R.REP. No. 1656, at 8 n. 20, U.S.Code Cong. & Admin.News 1976, p. 6129 n. 20. The cited article specifically argues that the problem should be remedied by removing barriers to such *injunctive* relief. See Charles F. Abernathy, *Sovereign Immunity in a Constitutional Government: The Federal Employment Discrimination Cases*, 10 HARV.C.R.– C.L.L.REV. 322, 366 (1975).[9]

The other references highlighted by Hubbard are even more tangential. Hubbard notes that the facts of *Gnotta v. United States*, 415 F.2d 1271 (8th Cir.1969), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970), a government employment case, were specifically discussed at the 1970 Hearing. *See, e.g., 1970 Hearing*, at 68, 158–61. But neither *Gnotta* nor the discussion of it at the hearings dealt with back pay. The sovereign immunity problem in *Gnotta* involved a federal employee who could not obtain any form of relief because he had chosen the wrong defendants to sue. *See Gnotta*, 415 F.2d at 1276–78.[10]

Hubbard also cites references to "federal employment" in discussions relating to the removal of the amount in controversy requirement, a statutory change separate from the waiver of sovereign immunity but which was also accomplished through the 1976 amendments. *See* H.R.REP. No. 1656, at 14, U.S.Code Cong. & Admin.News 1976, p. 6134. That reference merely demonstrates that Congress understood that where sovereign immunity was waived, there was still a barrier to federal court jurisdiction if the employee's loss was not quantifiable or did not exceed $10,000. The mention of federal employment in that context tells us zero about Congress' intent to expand the scope of immunity for back pay.

---

9. Hubbard emphasizes that the same article also said that "[w]hile claims for money from the treasury or for title to public land are certain to raise problems, it is unclear why such relief should be banned under the rubric of sovereign immunity." Abernathy, *supra*, at 367.. That sentence continues, however, to say that "accordingly, one can never be quite certain what relief other than land and treasury claims would be similarly barred." *Id.* at 367–68. Thus, the author merely noted that the lack of a firm conceptual understanding of the grounds for sovereign immunity made the application of that doctrine difficult to predict in borderline areas. We see nothing in the article to advance Hubbard's argument that the solution advanced in § 702 was intended to abrogate immunity for back pay awards.

10. Our colleagues point to *Leber v. Canal Zone Central Labor Union*, 383 F.2d 110 (5th Cir.

1967), *cert. denied*, 389 U.S. 1046, 88 S.Ct. 769, 19 L.Ed.2d 838 (1968), as a case that Congress was aware of and that demonstrates an intent to waive sovereign immunity for back pay. *See* Dissent at 550 n. 15. But the Fifth Circuit was explicit in *Leber* in noting that the plaintiffs only sought declaratory and injunctive relief, not back pay. *See Leber*, 383 F.2d at 113 ("This appeal is from a decision ... declaring that certain regulations ... are invalid ... and enjoining the ... enforc[ement of] these regulations."). As our dissenting colleagues recognize, *American Guaranty Corp. v. Burton*, 380 F.2d 789 (1st Cir.1967), involved specific monetary relief (*i.e.*, the recovery of funds contributed by a debtor in bankruptcy to the Referees' Salary and Expense Fund), not back pay. We do not dispute that § 702 waived sovereign immunity for specific monetary relief; rather, we find that back pay does not qualify as such.

## C. *Bowen v. Massachusetts*

*Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), does not resuscitate Hubbard's claim. Before *Bowen*, courts consistently found that back pay was not among the types of relief for which § 702 waived sovereign immunity. *See Hostetter v. United States*, 739 F.2d 983, 985 (4th Cir.1984) (dicta); *McCartin v. Norton*, 674 F.2d 1317, 1321–22 (9th Cir. 1982); *Sheehan v. Army & Air Force Exchange Service*, 619 F.2d 1132, 1139–40 (5th Cir.1980), *rev'd on other grounds*, 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982); *Glines v. Wade*, 586 F.2d 675, 681–82 (9th Cir.1978), *rev'd on other grounds sub nom. Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980); *Cook v. Arentzen*, 582 F.2d 870, 874–75 (4th Cir. 1978). Hubbard argues that *Bowen* changed all that. We do not find that to be true.

As already noted, in *Bowen* the Supreme Court emphasized that § 702's reference to "other than money damages" invoked the distinction between "damages" which are " 'sum[s] of money used as compensatory relief' " and "specific remedies" which " 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' " *Bowen*, 487 U.S. at 895, 108 S.Ct. at 2732 (quoting *Maryland Department of Human Resources v. Dept. of Health & Human Services*, 763 F.2d 1441, 1446 (D.C.Cir.1985)) (internal citations omitted). Applying that dichotomy to the case in front of it, the Court determined that Massachusetts' suit to enforce a statutory *entitlement* to receive withheld federal grant-in-aid money was a suit for specific relief. *See id.* 487 U.S. at 900–01, 108 S.Ct. at 2735–36. The fact that the entitlement Massachusetts sought to enforce was a cash allotment did not alter this conclusion: "The State's suit ... is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.* at 900, 108 S.Ct. at 2735 (emphasis in original).

*Bowen*'s holding thus does nothing for Hubbard's cause. Hubbard's basic claim is not for enforcement of any legal mandate that the EPA pay him a sum of money; rather, it is to force the EPA to offer him the job it denied him.

Hubbard ultimately bases his case on one line of dicta in *Bowen* possibly suggesting that back pay may be specific relief. In a background paragraph explaining the difference between specific and compensatory relief, the Court said:

> Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with back pay, or for the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions.

*Id.* at 893, 108 S.Ct. at 2732 (citations and emphasis omitted). Viewed in isolation, it is ambiguous whether the sentence was labelling back pay itself as specific relief, or merely making the unremarkable point that back pay often accompanies an award of reinstatement, which itself is unquestionably a form of specific relief. In the context of the entire opinion, however, we believe that the single reference cannot shoulder the burden of demonstrating that the Court intended to mandate an about-face on the hornbook view of back pay as damages as well as the decisions of all courts up to that point that back pay was not a form of specific relief for § 702 purposes but, rather, a form of compensatory damages. *Bowen* itself relies on DOBBS ON REMEDIES for the distinction between specific and compensatory relief. *See id.* at 895, 108 S.Ct. at 2732–33. That treatise is explicit in classifying back pay as money damages. *See* DOBBS ON REMEDIES, at 924–27; *id.* at 69 n. 18 (a claim for back pay incident to reinstatement "is precisely the claim available as damages to any wrongfully discharged employee"). Further,

*Bowen* specifically refers to the Back Pay Act, 5 U.S.C. § 5596, as a law that provides *compensatory* relief. *See Bowen,* 487 U.S. at 906 n. 42, 108 S.Ct. at 2738 n. 42 (referring to the Back Pay Act and other statutes as laws which "attempt to compensate a particular class of persons for past injuries or labors"). In the end, we cannot rest a general waiver of sovereign immunity as to back pay for federal employees on a single, ambiguous phrase in a background, descriptive portion of the *Bowen* opinion. We believe that the Court would have given us more explicit guidance than that had it intended to overturn both the common law understanding of back pay as well as lower courts' decade-long interpretation of § 702 as barring back pay relief.

A final word on *Bowen.* Contrary to our colleagues' accusation, *see* Dissent at 540, we in no way "cavalierly" dismiss that Supreme Court decision. We find only that *Bowen* 's holding does not support Hubbard's cause and that *Bowen* 's dicta is ambiguous and cannot carry the weight that Hubbard seeks to place on it. *See also* Dissent at 544 (noting that the reference to back pay "is offered only by way of example in *Bowen*").

### D. *Precedent From Other Areas of Law*

Hubbard's reliance on cases calling back pay "equitable" for other purposes is also misplaced. The crucial question for us is not whether back pay is "equitable," but what Congress meant by "other than money damages" in § 702. *Bowen* tells us that Congress was distinguishing *specific* from *compensatory* damages. What may qualify as an "equitable remedy" in the cases Hubbard cites is not synonymous with specific relief—transfer to the plaintiff of the thing to which he was entitled by law. Thus, the fact that cases in many contexts attach the "equitable" label to back pay in no way contradicts the basic conclusion that back pay is still essentially a compensatory device. In fact, many of the same courts that classify back pay as equitable in one part of an opinion affirm its compensatory nature in the next.

For example, Hubbard points to *United States v. Burke,* —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), as the most recent pronouncement of the equitable nature of back pay. In *Burke,* the question was whether back pay awarded for a violation of Title VII was "damages received ... on account of personal injury" under § 104(a)(2) of the Internal Revenue Code and thus excludable from gross income. Because the relevant Internal Revenue Service regulation interpreted the damages exclusion to apply only to remedies for tort or tort-type injuries, the Court's analysis turned on whether Title VII provided typical tort remedies, *i.e.,* a broad array of damages to compensate tangible and intangible injuries. *See id.,* —— U.S. at ——, 112 S.Ct. at 1871–72. The Court found that Title VII authorized only back pay, injunctions and other "equitable" relief, and not the full panoply of tort damages; thus, Title VII awards were not excludable from gross income. *See id.,* —— U.S. at ——, 112 S.Ct. at 1873–74. But the Court's finding that Title VII remedies were "equitable" did not by any means foreclose its simultaneous classification of back pay as basically compensatory in nature. To the contrary, the Court noted that "Congress declined to *recompense* Title VII plaintiffs for anything *beyond* the wages properly due them." *Id.,* —— U.S. at ——, 112 S.Ct. at 1874 (emphasis added). The same can be said of our decision in *Sparrow v. Commissioner,* 949 F.2d 434 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992), which anticipated *Burke.* Although we found that back pay under Title VII was not damages under the Internal Revenue Code, we nevertheless recognized that back pay under Title VII was compensatory: "The remedies available under Title VII exist to make whole the employee discriminated against, that is, to place him in the same position he would have been in but for the discrimination, *but not to compensate beyond that.*" *Id.* at 440 (emphasis added).

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), can be similarly parsed. There, the Court termed back pay under Title VII an "equi-

table" remedy, but continued to say that Title VII "compensat[ed]" and "ma[de] whole" the victim. *See id.* at 418–19, 95 S.Ct. at 2372, (internal citation omitted); *see also* Minna J. Kotkin, *Public Remedies for Private Wrongs: Rethinking the Title VII Back Pay Remedy,* 41 HASTINGS L.J. 1301, 1375 (1990) (noting that "equitable remedies in the Title VII context mean something quite different than traditional notions of equity").

The same analysis holds for cases involving the Seventh Amendment right to a jury trial. Although courts have routinely found that plaintiffs seeking back pay are asking for equitable relief and thus are not entitled to a jury trial, this finding generally rests on the assumption that back pay is incidental to, or an element of, the equitable remedy of reinstatement—not on a notion that back pay itself is specific and not compensatory. *Santiago–Negron v. Castro–Davila,* 865 F.2d 431 (1st Cir.1989), a case that Hubbard highlights, is typical. There, the First Circuit, after reviewing relevant cases from all over, found that a § 1983 claim seeking only reinstatement and back pay was equitable and should be heard by a judge, not a jury. *See id.* at 441. But its conclusion did not rest on any foundation that back pay itself was not compensatory. The court explicitly stated that back pay was "one of the items of compensatory damages." *Id.*

Much the same can be said of cases that have allowed awards of back pay under the Fair Labor Standards Act ("FLSA"). In *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), the Court found that, in order to provide a full equitable remedy, district courts could order a private employer to provide back pay to plaintiffs dismissed from work in violation of the FLSA. *See id.* at 292, 80 S.Ct. at 335–36. Again, labeling back pay as equitable for remedial purposes under the FLSA in no way detracted

from a recognition that back pay was still essentially "compensatory" relief. *See id.* at 293, 80 S.Ct. at 336.[11]

### E. Back Pay as Restitution

Finally, Hubbard argues that back pay is specific because it is restitutionary—it requires the EPA only to give back to Hubbard the money that the EPA should have given him in the first place as salary for the job Hubbard was denied. In support of this argument, Hubbard cites *School Committee v. Dept. of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), where the Supreme Court characterized reimbursement of parents' expenditures made because of a town's failure to meet its special education requirements as "pay[ment of] expenses that [the town] should have paid all along" rather than damages. *See id.* at 370–71, 105 S.Ct. at 2003. But again Hubbard misconceives the essence of our inquiry. Whether we or someone else call a remedy restitutionary, equitable or anything else, it fits within § 702's waiver only if it gives the plaintiff the specific thing to which he was originally entitled. In the *School Committee* case, the parents were statutorily entitled to the cost of the special education their child never received, and for which they expended their own money. Unlike Hubbard, they, like the State of Massachusetts in *Bowen,* met all the pre-existing legal obligations to receive a cash entitlement from the government, at the time they were denied it. *See id.* at 369, 105 S.Ct. at 2002 (noting that the Education for the Handicapped Act, 20 U.S.C. § 1401 *et seq.,* provides for public payment of private school expenses when an appropriate public education cannot be provided). At any rate, the Court's treatment of the reimbursement in *School Committee* as restitutionary was in a completely different context than § 702 and required no decision as to

**11.** In a few cases, back pay has been referred to as "specific relief." While we believe that, at least in this circumstance, that label is incorrect, it is important to note that even in those cases some courts found that back pay was also compensatory. For example, *United States v.*

*N.L. Industries, Inc.,* 479 F.2d 354 (8th Cir.1973), while referring to back pay as specific, *see id.* at 378, also stated that back pay is "compensation for the tangible economic loss resulting from an unlawful employment practice." *Id.* at 379 (internal citation omitted).

whether the relief was specific.[12] *Cf. United States v. Burke*, —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (finding that back pay was equitable under the Internal Revenue Code but nevertheless compensatory).

### III. CONCLUSION

Waiver of sovereign immunity requires a clear statement of congressional intent. Section 702 itself provides no such clear statement as to back pay; its legislative history tilts against such an interpretation; no court from 1976 to 1992 has held that there is such a waiver. We can find no basis in *Bowen* or elsewhere on which to conclude that Congress meant to include back pay in its waiver of immunity as to specific relief "other than money damages." Accordingly, the judgment of the district court denying back pay is

*Affirmed.*

RANDOLPH, Circuit Judge, with whom RUTH BADER GINSBURG, Circuit Judge, joins, concurring:

If Hubbard prevails, the government will have to pay him money to make up for wages he never earned. That he did not earn these wages is the government's fault. Hubbard suffered financially as a result, and the amount of his financial loss may be specific. But I fail to see how any of this renders Hubbard's claim something other than a claim for money damages. It is no different than if the government had employed an individual and he thereafter suffered a disabling injury as a result of the government's negligence. A claim for relief in such a case would be characterized as a claim for money damages. In neither case are wages "the very thing" of which the individual was deprived. In both cases the thing lost is the opportunity to earn those wages, to create an obligation on the part of the government to pay for services rendered. Backpay makes up for that lost opportunity. It is a form of unemployment compensation; and because backpay is paid by the employer responsible for the illegal hiring or firing, it gives the employer an incentive to comply with the law. "Damages," Judge Bork wrote in a passage relied upon by the Supreme Court, "are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' D. Dobbs, *Handbook on the Law of Remedies* 135 (1973)." *Maryland Dep't of Human Resources v. Department of Health and Human Services*, 763 F.2d 1441, 1446 (D.C.Cir.1985), *quoted with approval in Bowen v. Massachusetts*, 487 U.S. 879, 895, 108 S.Ct. 2722, 2732–33, 101 L.Ed.2d 749 (1988). The suffered loss here is not wages, but the chance to earn them. Money substitutes for that loss. The backpay award Hubbard seeks therefore constitutes "money damages" within the meaning of 5 U.S.C. § 702. As such, sovereign immunity bars relief. If the test were whether an action for instatement and backpay is equitable, and thus outside the Seventh Amendment's guarantee of trial by jury, I would be with Judge Edwards. *See Mitchell v. DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960). But the line section 702 draws is not between actions at law and suits in equity.

I therefore concur in the court's opinion.

---

12. According to Professor Laycock, restitution includes not only undoing of unjust enrichment but also restoration in kind of a specific thing. *See* Douglas Laycock, *The Scope and Significance of Restitution*, 67 Tex.L.Rev. 1277, 1279 (1989). But Professor Laycock does not intimate that back pay is restitutionary under that expanded conception; rather, he appears to warn against such a conclusion:

> "Restitution" is sometimes used in a third sense—to restore the value of what plaintiff lost.... But restitution of the value of what plaintiff lost is simply compensatory damages. Used in this sense, "restitution" loses all utility as a means of distinguishing one body of law from another. Restitution must be

distinguished from compensation, either by its focus on restoration of the loss in kind or by its focus on defendant's gain as a measure of recovery.

*Id.* at 1282–83. Giving back pay to Hubbard would return to him the "value" of the job from which he was wrongfully excluded and is thus compensatory damages, not "in kind" restitution. *Cf. Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974) (rejecting the description of a remedy as "equitable restitution" when the remedy was "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of ... state officials").

**540**

HARRY T. EDWARDS, Circuit Judge, with whom Chief Judge MIKVA concurs, dissenting:

As [Justice Holmes] said in a much-quoted passage from *Johnson v. United States*, 163 F. 30, 32 [ (1st Cir.1908) ]: "it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.

*Cabell v. Markham*, 148 F.2d 737, 739 (1945) (L. Hand, J.) (citations omitted).

Ten years ago, Michael Hubbard was unlawfully denied a job with the EPA for reasons that violated his First Amendment rights. He has prevailed in his claim that he would have been employed in the job that he sought *but for* the Government's unlawful refusal to hire him. The majority now holds that, although Mr. Hubbard is entitled to the job, he cannot recover the pay that he lost. This is a gross injustice, because, under a statute intended to give meaningful relief to victims of constitutional violations, Mr. Hubbard will leave court a "winner" in name only. In future cases of this sort, Government officials will have only a limited incentive to avert constitutional violations, and they will have great incentive to prolong litigation, as here, to delay hiring and avoid paying victims like Mr. Hubbard.

———

Equitable actions for specific relief against the United States are authorized by 5 U.S.C. § 702 (1988), which waives sovereign immunity for "relief other than money damages." In *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), the Supreme Court plainly stated that,

[o]ur cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and *an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay....*

*Id.* at 893, 108 S.Ct. at 2732 (emphasis added). The majority in this case now holds that the Supreme Court did not mean what it said in *Bowen*, and that a suit for instatement with back pay involves a claim for "money damages." Indeed, it is telling, we think, that the majority discards *Bowen* as mere "dicta." In our view, it is quite presumptuous for members of an inferior court to dismiss a decision of the Supreme Court in so cavalier a manner.

In addition to rejecting the decision as dicta, the majority also finds *Bowen* inapposite because "Hubbard's basic claim is not for enforcement of any legal mandate that the EPA pay him a sum of money"; this is a non sequitur, however, in light of the Court's explicit statement in *Bowen* that a claim for "[ ]instatement of an employee with backpay" *is* an "equitable action for specific relief" covered by section 702's waiver of sovereign immunity.

The Government's argument to the *en banc* court was no more convincing in its attempt to distinguish *Bowen*. Government counsel frankly conceded that Hubbard would be entitled to back pay if back pay is considered to be "specific" relief. The Supreme Court in *Bowen* addressed this precise point, plainly stating that a suit for "[ ]instatement ... with backpay" is an example of a case "long recognized" as "an equitable action for *specific relief.*"

The Government has attempted to narrow the scope of specific relief to exclude Hubbard's claim by arguing that a sum of money can only be specific relief if it is a "finite" amount, or a "sum certain," on the

date that the plaintiff files suit.[1] But this argument is advanced with no authority to support it. Furthermore, even if the argument had some support it would still fail, because Hubbard seeks nothing more than a finite and determinable sum of money equal to the exact amount that he would have earned as a criminal investigator at the EPA. Had Hubbard been hired, he would have received for his labor a finite sum of money that can easily be calculated according to the statutes governing federal wages. This "sum certain" is the precise amount that Hubbard is entitled to receive, incidental to his other equitable relief.

The simple truth in this case is that Hubbard seeks only an award of back pay that is "incidental to or intertwined with" injunctive relief. *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 571, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990). As the court said in *Bowen*, and as it has observed in numerous other cases, such a claim is properly characterized as "relief other than money damages" for which sovereign immunity is waived under 5 U.S.C. § 702 (1988). By definition, restitutionary or specific relief provides the plaintiff with " ' "the very thing" ' " that he would have had *but for* the defendant's unlawful action. *Bowen*, 487 U.S. at 895, 108 S.Ct. at 2732 (quoting *Maryland Dep't of Human Resources v. Department of Health & Human Servs.*, 763 F.2d 1441, 1446 (D.C.Cir.1985) (quoting DAN B. DOBBS, HANDBOOK ON THE LAW OF REMEDIES 135 (1973))). *See also* Douglas Laycock, *The Scope and Significance of Restitution*, 67 TEX.L.REV. 1277, 1279–80 (1989) (restitution includes the concept of restoring specific property to the plaintiff); DOBBS, *supra*, at 256 (*in specie* restitution restores to the plaintiff the very thing taken from him). It is also clear that, in certain circumstances, money can be a specific rather than a substitutionary remedy. *Bowen*, 487 U.S. at 895, 108 S.Ct. at 2732–33; DOBBS, *supra*, at 259 ("Recovery of money where money was the thing taken from the plaintiff is in a limited sense an *in*

*specie* recovery."). Hubbard has asked for the specific job and the specific wages he would have earned at that job *but for* the EPA's unlawful refusal to hire him; to give him the job and the wages is to give him the very thing that he is entitled to have.

During oral argument, a suggestion was made that back wages cannot be "specific relief" because any award must be adjusted downward to set off the amount of money that Hubbard earned at a replacement job before he was instated at the EPA. Apart from the obvious point that this suggestion is flatly at odds with what the Court said in *Bowen*, the argument is otherwise unavailing for two reasons. First, if specific relief is defined as *the very thing* that Hubbard is entitled to, then he is only entitled to receive the sum of money he would have earned during the time he rightfully should have been employed at EPA. Hubbard would not have taken replacement work *but for* EPA's illegal action. If we did not adjust the back pay award, he would receive a total sum of money for that time that is *greater* than the sum of money he would have earned had EPA not committed its unlawful action.

An award does not cease to be specific or restitutionary in nature simply because it is measured by the plaintiff's loss. As noted in the RESTATEMENT OF THE LAW OF RESTITUTION, § 149 (Note on Set-off and Counterclaim) (1937):

> Under ... statutes as ordinarily interpreted, unless the statute specifically provides otherwise, a cause of action for restitution is subject to such set-offs and counterclaims as would be permitted if the action were one founded upon a contract. Thus under a statute which permits set-offs or counterclaims in actions upon "contracts express or implied," a claim which at common law could be enforced by an action of assumpsit would ordinarily be subject to a set-off or counterclaim. Likewise, a person desiring to

---

1. Brief for Appellee/Cross–Appellant at 19–21, *Hubbard v. EPA*, Nos. 90–5233 & 90–5250 (D.C.Cir.1992); Record of Oral Argument, *Hub-* *bard v. EPA*, Nos. 90–5233 & 90–5250 (Sept. 30, 1992).

542

set off such a claim for restitution would ordinarily be entitled to do so in an action in which contractual claims could be set off.

*Id.* at 594–95.

The principle that a claim for "restitution" may be subject to offset has been routinely recognized and applied in this court for years. As we noted in *Williams v. Washington Metropolitan Area Transit Comm'n,* 415 F.2d 922 (D.C.Cir.1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969), "any proper resolution of [a] matter of restitution ... [must consider] the reality of [the parties'] financial experience during the years in question." *Id.* at 946 (awarding less than full restitution based upon claimants' concession that some fare increase would not have been unlawful). Likewise, in *Frederick County Fruit Growers Ass'n, Inc. v. Martin,* 968 F.2d 1265 (D.C.Cir.1992), this court upheld a full restitutionary back pay award, but recognized that "less than full restitution is appropriate in certain circumstances." *Id.* at 1274. This is so because restitutionary awards are governed by equitable principles, and the measure of the award rests within the sound discretion of the judge sitting in equity. If compelling equitable considerations dictate that Hubbard's award should be set off, then this court should exercise its equitable discretion to do so. *See id.*

Second, this argument skirts the fundamental inquiry in this case, which is whether back pay is a form of "specific relief" that is inextricably intertwined with equita-

ble relief in the form of instatement. Back wages in this case are not a "substitute" for what Hubbard would have earned, or "compensation in lieu of" his salary, or even the "value" of the job. Wages are the *very thing* of which Hubbard was deprived, and the only thing needed to make his relief complete. Hubbard has prevailed in his civil rights claim, an injunction has already issued, and we believe that he is entitled to the wages that he would have earned *but for* the agency's unlawful action.

The majority also has suggested that awarding back pay to Hubbard would expose the government fisc to a significant number of claims unanticipated by Congress. This fear is wholly unfounded. First of all, by awarding back pay to Michael Hubbard, we are not opening a Pandora's box of new claims against the Government. As Judge Wald recognized at oral argument, Hubbard's claim is uniquely postured: he cannot sue for *Bivens* damages because that remedy is precluded by the Civil Service Reform Act,[2] and he cannot sue in the Claims Court under the Tucker Act because he never had an employment contract with the government and because his claim is based on the First Amendment.[3] Unlike most plaintiffs with employment claims against the government, Hubbard cannot pursue other statutory remedies because he was never a government employee. The Back Pay Act, for example, only provides remedies for *employees*[4] of the federal government. 5 U.S.C. § 5596(b)(1) (1988).

---

**2.** *Spagnola v. Mathis,* 859 F.2d 223, 230 (D.C.Cir. 1988) (en banc) (per curiam).

**3.** The Tucker Act confers exclusive jurisdiction on the Claims Court over all claims against the government seeking monetary relief in excess of $10,000, if the claim is brought pursuant to an express or implied contract, or if a non-contractual claim is brought pursuant to a statutory or substantive constitutional right. *See* 28 U.S.C. § 1491(a)(1) (1988). Non-contractual claims must be based on statutory or constitutional rights that mandate the payment of money damages. The Federal Circuit has held that a person like Hubbard would be barred from bringing a claim under the Tucker Act because the First Amendment, by its terms, does not mandate the payment of money. *United States v.*

*Connolly,* 716 F.2d 882, 887 (Fed.Cir.1983) (en banc) (holding that Claims Court does not have jurisdiction over wrongful termination claim of probationary civil servant fired for exercising his First Amendment freedoms), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

**4.** To be considered an employee of the federal government for the purposes of the Back Pay Act, a person must (1) be appointed by a federal officer or employee, (2) perform a federal function, and (3) be subject to supervision by a federal officer or employee. 5 U.S.C. § 2105(a) (1988). *See Hedman v. United States,* 15 Cl.Ct. 304, 313 (1988); *Lambert v. United States,* 4 Cl.Ct. 303, 305, *aff'd,* 746 F.2d 1490 (Fed.Cir. 1984).

Furthermore, awarding back pay to Hubbard would not, as the majority fears, "trump" the Back Pay Act by allowing government employees with back pay claims to sue in District Court for reinstatement and back pay. In advancing this argument, the majority ignores the final sentence of section 702, which provides that "Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702 (1988). This limitation on actions under section 702 ensures that a plaintiff cannot use the statute to obtain equitable relief in a district court if Congress has already "dealt in particularity with a claim and intended a specified remedy to be the exclusive remedy." H.R.REP. No. 1656, 94th Cong., 2d Sess. 13 (1976), U.S.Code Cong. & Admin.News 1976, p. 6133. The House Report specifically cites the Tucker Act as an example of a statute that "impliedly forbids" relief other than the remedy provided by the Act,[5] but it also mentions that this provision is written broadly, to refer to *"all* statutes which grant consent to suit and prescribe particular remedies." *Id.* (emphasis added). We must assume that the Back Pay Act, which mandates a particular remedy for specific personnel actions, and which depends on a prior finding of jurisdiction in the Federal Circuit under the Tucker Act,[6] also impliedly forbids relief other than the remedy provided by the Act.

Finally, considering the small group of plaintiffs that would be affected by a holding in Hubbard's favor, the legislative history of section 702 provides strong and convincing support for awarding back pay in this case. We believe that Congress intended section 702 to waive sovereign immunity for specific relief in the form of back pay that is incidental to and intertwined with instatement. The legislative history indicates that section 702 was intended to "strengthen" the government's accountability by eliminating the sovereign immunity defense "in all equitable actions for specific relief." *Id.* at 4, 9; S.REP. No. 996, 94th Cong.2d Sess. 4, 8 (1976), U.S.Code Cong. & Admin.News 1976, pp. 6124, 6129. The legislative history specifically contemplated that section 702 would waive sovereign immunity in government employment actions. H.R.REP. No. 1656 at 9; S.REP. No. 996 at 8, U.S.Code Cong. & Admin.News 1976, p. 6129. Nothing in the legislative history explicitly *excludes* back pay remedies. Given this evidence in favor of awarding a specific remedy of back pay, we see no reason to construe the statute so narrowly that it excludes Hubbard's relief. We agree with the majority that this court should not construe waivers of sovereign immunity broadly, but "[n]either should it as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it." *Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955).

**5.** Thus, for example, a plaintiff with a contract claim for an amount greater than $10,000 could not sue in the District Court under section 702 for *specific performance of her contract;* she may only sue in the Claims Court for appropriate relief. *See* H.R.REP. No. 1656 at 12–13.

In addition to the limitation on section 702, section 704 of the APA bars District Court jurisdiction over claims for which an adequate remedy *in another court exists.* 5 U.S.C. § 704 (1988). *See Bowen,* 487 U.S. at 904, 108 S.Ct. at 2737 (holding that section 704 does not bar District Court jurisdiction when the Claims Court does not provide a "special and adequate review procedure" for that claim). In *Mitchell v. United States,* 930 F.2d 893 (Fed.Cir.1991), the Federal Circuit held that a serviceman could not sue for restitution and back pay in a District Court under section 702. The court found that

the Claims Court offered "specific and adequate review procedures," and thus District Court jurisdiction was barred by section 704. *Id.* at 897.

**6.** The Back Pay Act does not contain an independent grant of jurisdiction, but it does contain the kind of substantive right to a monetary remedy that gives rise to Tucker Act jurisdiction. *See Bowen,* 487 U.S. at 906 n. 42, 108 S.Ct. at 2738 n. 42; *United States v. Testan,* 424 U.S. 392, 398, 405–06, 96 S.Ct. 948, 956–57, 47 L.Ed.2d 114 (1976); *Mitchell,* 930 F.2d at 896 n. 3; *Connolly,* 716 F.2d at 887. In *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Supreme Court held that the only entities with authority to review a Back Pay Act claim are (1) the agency that took the unwarranted personnel action, (2) the Merit Systems Protection Board, and (3) the Federal Circuit. *Id.* at 454, 108 S.Ct. at 677.

Because we believe that Hubbard is entitled to back pay, and that the panel majority was correct in its analysis of the issue, we reprint the panel majority's arguments below, with few revisions.[7] We would analyze Hubbard's entitlement to back pay under 5 U.S.C. § 702 (1988) in the following manner.

## A. *Back Pay as Equitable Relief*

Courts have recognized the equitable nature of back pay awards in a number of different contexts. Generally, these decisions hold that back pay constitutes the very thing that the plaintiff would have received *but for* the defendant's illegal action; back pay is thus seen to reflect equitable restitution. Some decisions also justify a back pay award as incidental to an equitable instatement order. On either rationale, there is strong authority supporting Hubbard's claim for back pay relief in this case.

As noted above, *Bowen v. Massachusetts* is a case in point. In *Bowen,* the Supreme Court expressly described back pay as an equitable award. The *Bowen* Court considered a challenge to a disallowance of Medicaid disbursements made by the Secretary of Health and Human Services, and held that section 702's waiver of sovereign immunity extended to monetary awards that could be characterized as equitable relief. The Court specifically cited *"reinstatement ... with backpay"* to illustrate a form of equitable relief, as distinguished from money damages.

> Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for "the recovery of specific property *or monies,* ejectment from land, or injunction either

directing or restraining the defendant officer's actions."

> 487 U.S. at 893, 108 S.Ct. at 2732 (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 1460–61, 93 L.Ed. 1628 (1949)). Although the reference to "backpay" is offered only by way of example in *Bowen,* it is a critically important citation because the entire *Bowen* decision focuses on the distinction between money awarded in equity as specific relief and "money damages."

The Court's statement in *Bowen* is hardly surprising, for the concept of back pay as equitable relief has been recognized by the Supreme Court in other contexts as well. In *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), for example, the Court characterized back pay under Title VII as equitable relief. Although noting that Congress had included back pay among several statutory remedies available to redress Title VII violations, the Court observed that the judicial discretion to award back pay "is equitable in nature," consistent with the "historic power of equity to award lost wages." *Id.* at 416, 95 S.Ct. at 2371. In fact, the Court characterized the statutory reference to back pay, *see* 42 U.S.C. § 2000e–5(g) (1988), as a congressional reference to courts' inherent authority, not as a grant of any new remedial authority.

> It is true that "[e]quity eschews mechanical rules ... [and] depends on flexibility." But when Congress invokes the Chancellor's conscience to further transcendent legislative purposes, what is required is the principled application of standards consistent with those purposes and not "equity [which] varies like the Chancellor's foot." ...

> ....

> It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination. This is shown by the very fact that Congress took care to arm the courts with full equitable powers. For it

---

**7.** The panel's opinion is reported at *Hubbard v. EPA,* 949 F.2d 453 (D.C.Cir.1991) (Edwards, J., writing for the majority).

is the historic purpose of equity to "secur[e] complete justice."
422 U.S. at 417–18, 95 S.Ct. at 2371–72 (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946); *Brown v. Swann,* 35 U.S. (10 Pet.) 497, 503, 9 L.Ed. 508 (1836)); *see also* 118 Cong.Rec. 7168 (1971) ("The provisions of this subsection are intended to give the courts wide discretion in exercising their equitable powers to fashion the most complete relief possible.") (statement of Senator Williams, introducing the Conference Report to the 1972 Title VII amendments).

In Seventh Amendment cases, where the right to a jury trial turns on whether the relief sought is legal or equitable, the Court has continued to note the equitable nature of Title VII back pay awards under the pre–1992 version of the statute. In *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), the Court held that damages under Title VIII for race-based denials of housing were legal in nature and must be awarded in a jury trial. For contrast, the Court cited the back pay remedy under Title VII.

> We need not, and do not, go so far as to say that any award of monetary damages must necessarily be "legal" relief. A comparison of Title VIII with Title VII of the Civil Rights Act of 1964, where the courts of appeals have held that jury trial is not required in an action for reinstatement and backpay, is instructive, although we of course express no view on the jury trial issue in that context. In Title VII cases the courts of appeals

have characterized backpay as an integral part of an equitable remedy, a form of restitution.

*Id.* at 196–97, 94 S.Ct. at 1009–10 (citations and footnote omitted). Similarly, in *Terry,* the Court reiterated that it has noted that "backpay sought from an employer under Title VII would generally be restitutionary in nature." 494 U.S. at 572, 110 S.Ct. at 1349.[8] *See also Lehman v. Nakshian,* 453 U.S. 156, 166–67, 101 S.Ct. 2698, 2704–05, 69 L.Ed.2d 548 (1981); *Great American Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979); *Lorillard v. Pons,* 434 U.S. 575, 584–85, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978).

Those courts of appeals which have addressed the issue have been unanimous in holding that an action for back pay under Title VII, at least when joined with a claim for reinstatement and not joined with a damages claim, is equitable and gives rise to no jury trial right. *See Ramos v. Roche Products, Inc.,* 936 F.2d 43, 49–50 (1st Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991); *Walton v. Eaton Corp.,* 563 F.2d 66, 69, 84 (3d Cir. 1977); *Cox v. Babcock & Wilcox Co.,* 471 F.2d 13, 14 (4th Cir.1972); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir.1969); *Moore v. Sun Oil Co.,* 636 F.2d 154, 156 (6th Cir.1980); *Grayson v. Wickes Corp.,* 607 F.2d 1194, 1196 (7th Cir.1979); *Harmon v. May Broadcasting Co.,* 583 F.2d 410 (8th Cir. 1978) (per curiam); *Slack v. Havens,* 522

**8.** In *Terry,* employees sued their Union for damages for breach of the duty of fair representation. The Court held that the employees had a right to a jury trial because they sought legal relief, even though the damages they sought were measured by the employees' lost earnings. Significantly, lost earnings were not the very thing to which the employees would have been entitled *from the Union* had there been no breach of the duty of fair representation. Thus, the Court found that lost earnings were a legitimate measure of compensation due for the employees' injuries suffered by virtue of the Union's wrongdoing, but that they were not restitutionary in nature. *See* 494 U.S. at 570–71, 110 S.Ct. at 1347–48.

In *Wooddell v. International Bhd. of Elec. Workers,* — U.S. —, 112 S.Ct. 494, 116

L.Ed.2d 419 (1991), the Court followed *Terry* to hold that the petitioner was entitled to a jury trial for his claim that the Union had violated its duty of fair representation. The petitioner sought to enjoin the Union from discriminating against him in job referrals, and sought back pay for the jobs to which the Union had failed to refer him. The Court found that the back pay petitioner sought was not properly characterized as restitutionary because it was not sought *for jobs and wages that the petitioner would have been entitled to* but for *the Union's unlawful action;* had the Union acted lawfully, the petitioner would have been entitled to a referral only, not to the job and its wages. *Id.,* — U.S. at —, 112 S.Ct. at 497–98.

F.2d 1091, 1094 (9th Cir.1975); *Snider v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir.1991); *Lincoln v. Board of Regents*, 697 F.2d 928, 934 (11th Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983). This line of cases also answers the possible contention that Title VII awards, because authorized by statute, are somehow different than back pay awards. The constitutional question does not change because Congress has created the right. *See Curtis*, 415 U.S. at 194, 94 S.Ct. at 1008.

Although it has not confronted the Seventh Amendment question directly, this Circuit has endorsed the proposition that in a Title VII action "back pay is not in the nature of a claim for damages, but rather an integral part of the statutory equitable remedy." *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 186 (D.C.Cir.1974) (quoting *Johnson v. Georgia Highway Express*, 417 F.2d at 1125).[9] *See also Sparrow v. Commissioner*, 949 F.2d 434, 438 (D.C.Cir.1991) (holding that back pay awards are not excludable from gross income under 26 U.S.C. § 104(a)(2) (1988) because the "overwhelming weight of authority supports the view that an award of back pay under Title VII does not constitute the legal remedy of damages"), *cert. denied*, —— U.S. ——, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992).

Another area in which the Supreme Court has recognized the equitable nature of back pay awards is in actions under the Fair Labor Standards Act. In *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), the Court held that courts had equitable jurisdiction to award back pay. The Court first characterized the specific action in question, an action by the Secretary of Labor to enjoin violations of section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3), as an equitable action. *Id.* at 292, 80 S.Ct. at 335. The Court then held it within a court's equitable jurisdiction to award back pay to protect the rights created by the Act. *Id.* at 292–93, 80 S.Ct. at 335–36. Notably, the remedial section of the FLSA, unlike Title VII, at the time contained no reference either to

back pay or equitable relief in general. *See* 29 U.S.C. § 217 (1958) (District Courts may "for cause shown, ... restrain violations of section 15"). The Court expressly refuted the idea that a statute must authorize a back pay award: "The court below took as the touchstone for decision the principle that to be upheld the jurisdiction here contested 'must be expressly conferred by an act of Congress or be necessarily implied from a congressional enactment.' In this the court was mistaken." 361 U.S. at 290, 80 S.Ct. at 334 (citation omitted). Quoting from *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946), in which the Court used its equitable jurisdiction to force the refund of rents extracted in violation of wartime price controls, the Court continued: "Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction." 361 U.S. at 291, 80 S.Ct. at 334.

Implied private rights of action under the Title VI prohibition of discrimination against the handicapped provide yet another context in which the Supreme Court has recognized the equitable nature of back pay awards. *See Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984). In *Darrone*, the Court faced as a threshold matter the question whether or not the implied right of action survived the plaintiff's death. The Court held that it did:

Without determining the extent to which money damages are available under § 504 [29 U.S.C. § 794], we think it clear that § 504 authorizes a plaintiff who alleges intentional discrimination to bring an equitable action for backpay.

*Id.* at 630, 104 S.Ct. at 1252.

Finally, in *United States v. Burke*, —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), the Supreme Court held that a back pay award under Title VII was not excludable from gross income under section 104(a)(2) of the Internal Revenue Code because Title VII does not recompense tort-

---

9. Of course, the Seventh Amendment question is not before us in this case. We note these deci-

sions merely to demonstrate that courts have recognized back pay as an equitable remedy.

like injuries: "Nothing in [Title VII's] remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury." The Court further noted that, "Congress *declined to recompense* Title VII plaintiffs for anything beyond the *wages properly due them.*" *Id.*, — U.S. at —, 112 S.Ct. at 1873–74 (emphasis added). *Burke* teaches that back pay awards under Title VII are properly considered restitutionary because they constitute the "wages properly due" to the plaintiff.[10]

In addition to the foregoing areas, the courts of appeals have authorized equitable back pay awards in a number of other cases. *See, e.g., Bertot v. School Dist. No. 1,* 613 F.2d 245, 250 (10th Cir.1979) (en banc) (equitable back pay remedy available in *Pickering* cases); *McKinley v. City of Eloy,* 705 F.2d 1110, 1116 n. 3 (9th Cir. 1983) (same); *Cline v. Roadway Express, Inc.,* 689 F.2d 481, 488–90 (4th Cir.1982) (recognizing equitable nature of back pay award under Age Discrimination in Employment Act); *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 281 (8th Cir. 1983) (same); *Troy v. City of Hampton,* 756 F.2d 1000, 1002 (4th Cir.) (back pay under Veteran's Reemployment Rights Act is equitable), *cert. denied,* 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985); *Skeets v. Johnson,* 805 F.2d 767, 774–75 (8th Cir. 1986) (awarding equitable back pay for interim between termination in violation of due process and the required hearing), *rev'd on other grounds,* 816 F.2d 1213 (8th

Cir.1987) (en banc); *McGhee v. Draper,* 639 F.2d 639, 646 (10th Cir.1981) (same); *Gurmankin v. Costanzo,* 626 F.2d 1115, 1122 (3d Cir.1980) (awarding equitable back pay in action under 42 U.S.C. § 1983 to victim of discrimination on the basis of blindness), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 352 (1981); *McFerren v. County Board of Educ.,* 455 F.2d 199, 203–04 (6th Cir.) (holding there was no jury trial right where court ordered reinstatement and back pay to teachers fired after desegregation order; in discrimination case, back pay is equitable), *cert. denied,* 407 U.S. 934, 92 S.Ct. 2461, 32 L.Ed.2d 817 (1972); *Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 441 (1st Cir.1989) (in patronage hiring case, back pay award, if not joined with damages claim, is equitable); *Hornsby v. Saint Louis S.W. Ry. Co.,* 963 F.2d 1130, 1132–33 & n. 3 (8th Cir.1992) (awarding equitable reinstatement and back pay in a claim brought under section 60 of the Federal Employer's Liability Act).[11]

These precedents aside, we think in this case Hubbard's back pay claim constitutes an equitable action for specific relief. In *Terry,* the Supreme Court considered two ways the plaintiffs' action for back pay might be equitable: if it was restitutionary or if it was incidental to or intertwined with injunctive relief. 494 U.S. at 570–71, 110 S.Ct. at 1347–48. Both of these factors apply here. Hubbard was denied a specific job and the pay that goes with it. An award of instatement and back pay gives

---

**10.** Earlier in the opinion, the Court in *Burke* noted that "Title VII focuses on 'legal injuries of an economic character,' ... consisting specifically of the unlawful deprivation of full wages earned or due for services performed, or the unlawful deprivation of the opportunity to earn wages through wrongful termination. The remedy, correspondingly, consists of restoring victims, through back pay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination." — U.S. at —, 112 S.Ct. at 1873 (quoting *Albemarle Paper Co.,* 422 U.S. at 419–20 & n. 11, 95 S.Ct. at 2372–73 & n. 11).

**11.** We have identified one case in which the court has treated pay as legal damages. We believe, however, that it does not present the situation reflected here or in the cases above.

In *Setser v. Novack Inv. Co.,* 638 F.2d 1137 (8th Cir.), *modified,* 657 F.2d 962 (8th Cir.) (en banc), *cert. denied,* 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981), the Eighth Circuit held that the plaintiff was entitled to a jury trial on his 42 U.S.C. § 1981 reverse discrimination suit. The plaintiff sought back pay and damages, but not reinstatement. The court found that the back pay sought was legal damages. *Id.* at 1142 ("We conclude that back pay or lost wage determinations are inherently in the nature of legal damages."). The Eighth Circuit seems to have questioned that case, however. See *Brewer v. Parkman,* 918 F.2d 1336 (8th Cir.1990), *vacated and modified,* 938 F.2d 860 (8th Cir.1991) (en banc). In *Brewer,* the plaintiff had sought back pay incidental to reinstatement and the court characterized the award as equitable. 918 F.2d at 1343.

Hubbard the precise thing to which he was entitled and therefore constitutes specific restitution. *See* RESTATEMENT, *supra,* § 4 (equity awards the specific thing taken). Although such an award involves money, that alone does not take it outside equity. *See* DOBBS, *supra,* at 135 ("[o]ccasionally a money award is also a specie remedy"), *quoted in Bowen,* 487 U.S. at 895, 108 S.Ct. at 2732.

In arguing that back pay cannot be restitution, the majority, in our opinion, misconceives the "thing taken." By stating that back pay "essentially pays the plaintiff for the economic losses suffered as a result of the employer's wrong," the majority has conceived of the thing taken solely as the right to work. By analogy to a specific performance action, the majority's hypothetical employment contract contains only one term—that Hubbard shall work for the EPA. Such a contract, although possibly not void for lack of consideration, is surely not what either party would have imagined and is surely not what Hubbard would have received *but for* EPA's unconstitutional actions. The "thing taken" must have been both the position *and* the pay. Our interpretation does not eliminate the concept of compensatory damages. Here, there might have been damages for stigmatic injury, costs incurred for retraining or relocation, or other consequential injuries. Simply because the restitutionary measure equals the primary compensatory element does not cause it to lose its character as restitution. *See* Laycock, *supra,* at 1285–86.

The money that Hubbard seeks would not be awarded to compensate for an infringement of an intangible right, as in *Bivens* actions. Rather, it is intertwined with, and flows directly from, an award of instatement—specific relief of the sort traditionally given in equity.

## B. *Waiver of Sovereign Immunity*

Our conclusion that a back pay award to Hubbard would constitute equitable relief largely disposes of any question regarding sovereign immunity. Section 702 of the APA waives that immunity for all suits seeking specific relief and we think an equitable award of back pay clearly qualifies.

The Supreme Court's decision in *Bowen* makes clear that section 702's proviso excluding money "damages" did not mean that no monetary relief could be awarded. 487 U.S. at 891–901, 108 S.Ct. at 2730–36. As noted above, the Court used an equitable award of back pay as an example of the relief that would be permitted under section 702.[12] Since *Bowen,* two courts have stated, albeit one in dicta, that an award of back pay would fall within section 702.

12. The majority suggests that this statement merely establishes that back pay often is awarded together with reinstatement. The Title VII cases do not see it this way, for they type back pay as relief more akin to reinstatement than to damages. Additionally, several courts have characterized back pay as specific relief. *See Bowen,* 487 U.S. at 893, 108 S.Ct. at 2731–32 ("an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay"); *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 751, 96 S.Ct. 1251, 1258, 47 L.Ed.2d 444 (1976) ("the District Court declined, however, to grant the unnamed members of classes 3 and 4 any other specific relief sought, which included an award of backpay"); *Riddle v. Cerro Wire & Cable Group, Inc.,* 902 F.2d 918, 922 (11th Cir.1990) ("[t]he EEOC's complaint sought specific relief for Riddle in the form of backpay and promotion"); *Ward v. Arkansas State Police,* 653 F.2d 346, 348 (8th Cir.1981) ("[t]he consent decree ... established guidelines for back pay and other specific relief"); *McClain v. Wagner Elec. Corp.,* 550 F.2d 1115, 1118 (8th Cir.1977) ("the settlement ... gave no specific relief such as back pay"); *United States v. N.L. Indus., Inc.,* 479 F.2d 354, 378 (8th Cir.1973) ("[t]he Government requests specific relief for individual applicants, including backpay differentials"); *City of Fort Smith v. Driggers,* 305 Ark. 409, 808 S.W.2d 748, 753 (1991) (the "complaint sought specific relief in the form of promotion and back pay"); *Eureka Teacher's Ass'n v. Board of Educ.,* 202 Cal.App.3d 469, 247 Cal.Rptr. 790, 794 (1988) (" 'Back pay clearly is specific monetary relief incidental to the requested orders that appellant be hired and that respondents be enjoined from discriminating against him.' ") (quoting *Snipes v. City of Bakersfield,* 145 Cal. App.3d 861, 193 Cal.Rptr. 760, 765 (1983)). *But see General Tel. Co. v. EEOC,* 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980) ("EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for backpay"). *General Telephone* might be distinguished because EEOC, acting on behalf of employees and the general public, is not suing for back pay owed it.

*Ulmet v. United States,* 888 F.2d 1028, 1030–31 (4th Cir.1989) (finding jurisdiction in the district court to award back pay, although sanctioning its decision to defer to the Claims Court); *DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377, 1381 (10th Cir.1990) (dicta), *cert. denied,* —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *see also Gleason v. Malcom,* 718 F.2d 1044, 1048 (11th Cir. 1983) (in rejecting a First Amendment damages claim, the court wrote: "As a federal employee, she could have sought equitable relief, *i.e.,* reinstatement and back pay, pursuant to the Administrative Procedure Act"); *Nixon v. United States,* 938 F.2d 239, 251 n. 4 (D.C.Cir.1991) (Edwards, J., concurring in part and dissenting in part) ("Moreover, in the wake of the Supreme Court's decision in *Bowen,* it would appear that even had Nixon sought back pay in this action, his suit would still not be one for 'money damages' within the meaning of 5 U.S.C. § 702.").[13]

If *Bowen*'s use of back pay as an illustration is not sufficiently persuasive, we think the reasoning of that decision compels a finding that back pay is within section 702's waiver. By its terms, section 702 waives sovereign immunity for all relief other than "money damages." The *Bowen* Court relied heavily on this circuit's decision in *Maryland Department of Human Resources v. Department of Health & Human Services* to construe that term and held that it did not encompass all monetary relief. Money given "to *substitute* for a suffered loss*" constituted damages, whereas " 'attempt[s] to give the plaintiff the very thing to which he was entitled' " were specific relief and within the waiver. *See Bowen,* 487 U.S. at 895, 108 S.Ct. at 2732 (quoting *Maryland Dep't of Human Resources,* 763 F.2d at 1446 (quoting DOBBS, *supra,* at 135)). "The fact that in the present case it is money rather than in-kind benefits … cannot transform the nature of the relief sought—specific relief, not relief in the form of damages." 487 U.S. at 895, 108 S.Ct. at 2733 (quoting 763 F.2d at 1446). No less than the funds restored to Massachusetts in *Bowen,* we think Hubbard's back pay, being part of the very thing EPA unconstitutionally withheld, constitutes specific relief.[14]

Reviewing the legislative history of section 702, the *Bowen* Court noted that Congress intended "to eliminate the sovereign immunity defense in all *equitable* actions for specific relief against a Federal agency or officer acting in an official capacity." H.R.REP. No. 1656 at 9; S.REP. No. 996 at 8, *quoted in Maryland Dep't of Human Resources,* 763 F.2d at 1447; *Bowen,* 487 U.S. at 899, 108 S.Ct. at 2734–35 (emphasis added). The majority, in distinguishing between compensatory relief and specific relief, glosses over this statement from both committees. Both *Bowen* and *Maryland Department of Human Resources* applied this statement to a list of actions contem-

---

**13.** We recognize that, before *Bowen,* several courts found that back pay awards do not fall within section 702. Because these decisions were issued before *Bowen,* and were premised on an assumption that all awards of monetary relief fell outside the waiver, we do not view these cases as dispositive of the issue before us. In fact, the Government does not even seek to rely on them. *See Hostetter v. United States,* 739 F.2d 983, 985 (4th Cir.1984) (dicta); *McCartin v. Norton,* 674 F.2d 1317, 1321–22 (9th Cir.1982); *Sheehan v. Army & Air Force Exch. Serv.,* 619 F.2d 1132, 1139–40 (5th Cir.1980), *rev'd on other grounds,* 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982); *Glines v. Wade,* 586 F.2d 675, 681–82 (9th Cir.1978), *rev'd on other grounds,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980); *Cook v. Arentzen,* 582 F.2d 870, 874–75 (4th Cir.1978). *Cf. Ulmet,* 888 F.2d at 1030 (4th Cir.1989) (*Cook v. Arentzen* not good law after *Bowen* ).

**14.** The majority asserts that Dobbs is "explicit in classifying backpay as money damages." To the extent that Dobbs' view controls either *Bowen* or ourselves, Dobbs may be read to embrace the idea that back pay may be specific relief. Given that Dobbs recognizes the restitutionary/substitutionary dichotomy as central to specific relief, the cited passages admit of that interpretation. Dobbs' statement of the measure of damages, what the contract would have brought the employee, is exactly consistent with our interpretation. *See also* ROBERT S. THOMPSON & JOHN A. SEBERT, JR, REMEDIES: DAMAGES, EQUITY AND RESTITUTION § 2.02 (1983) (Specific performance is specific relief and award of contract price is specific performance); EDWARD D. RE, CASES AND MATERIALS ON REMEDIES 310 (1987) (same). As we noted previously, that lost wages is a damage measure does not mean it is not also specific relief.

plated by the committee which included not only "Federal grant-in-aid programs," but also "agricultural regulations, *governmental employment*, tax investigations, postal-rate matters, administration of labor legislation, control of subversive activities, [and] food and drug regulation." H.R.REP. No. 1656 at 9; S.REP. No. 996 at 8 (emphasis added).

In any event, the principal question before us is whether back pay constitutes "money damages" within the meaning of section 702's exclusion. The Supreme Court in *Bowen* held that an award of money constituted "money damages" only when the money "substitutes for a suffered loss." *Bowen*, 487 U.S. at 895, 108 S.Ct. at 2732 (quoting *Maryland Dep't of Human Resources*, 763 F.2d at 1446 (quoting DOBBS, *supra*, at 135)). Here, the back pay does not substitute for any damage, such as pain or defamation, but is the exact thing Hubbard should have received. Second, to the extent that canons are reliable in statutory interpretation, *see, e.g.*, WILLIAM N. ESKRIDGE & PHILIP P. FRICKEY, CASES AND MATERIALS ON LEGISLATION: STATUTES AND THE CREATION OF PUBLIC POLICY 689 (1988) (noting that canons may be used on any side of a construction argument), we believe that "remedial statutes should be broadly construed" is the appropriate canon of interpretation to be applied in this case, given Congress' expressed intent that plaintiffs with meritorious claims against the government not be barred by sovereign immunity. *See* H.R.REP. No. 1656 at 8, 9; S.REP. No. 996 at 7, 8, U.S.Code Cong. & Admin.News 1976, pp. 6128, 6129: ("enactment of [the bill] is 'urgent' in order to remove 'the unnecessary injustice caused by sovereign immunity'" (quoting Professor Kenneth Davis); "the time now [has] come to eliminate the sovereign immunity defense in all equitable actions for specific relief").[15]

When arguing before the panel, the Government contended that, under *Bowen*, money awarded can only be specific relief when there is a statutory requirement that those monies be paid, or, that equitable relief can never include money unless the money sought is given pursuant to a specific statutory authorization. Before the *en banc* court, the Government apparently abandoned this argument for its "sum certain" theory.[16] Neither theory makes sense, however, in light of the *Bowen* Court's reference to "back pay" as specific, equitable relief and the legislative history which lists "government employment" among the equitable actions for which specific relief may be granted.[17] Although

**15.** Contrary to the majority's claim, the Senate Judiciary Committee had before it at least two examples where sovereign immunity was used to bar specific monetary relief, including back pay. The majority contends that the "governmental employment" cases cited to the Senate Judiciary Committee by Professor Roger Cramton did not include any cases where sovereign immunity barred a back pay award. One of the cases did, however, involve a claim for lost wages. See *Leber v. Canal Zone Cent. Labor Union*, 383 F.2d 110, 114–15 (5th Cir.1967) (In concluding that the Secretary of the Army was an indispensable party, the court wrote: "The Secretary must authorize the payment of any former differential. He must order the payment to employees of any monetary losses resulting from invalid regulations."), *cert. denied*, 389 U.S. 1046, 88 S.Ct. 769, 19 L.Ed.2d 838 (1968). Additionally, in the law review article advocating the amendment to section 702, Professor Cramton, in the same footnote discussing the cases cited to the committee, noted another case in which sovereign immunity barred the recovery of specific monetary relief. *See* Roger C. Cramton, *Nonstatutory Review of Federal Ad-*

*ministrative Action: The Need for Statutory Reform of Sovereign Immunity, Subject Matter Jurisdiction, and Parties Defendant*, 68 MICH.L.REV. 387, 423 n. 161 (1970) (referring to *American Guaranty Corp. v. Burton*, 380 F.2d 789, 790–91 (1st Cir.1967) (sovereign immunity barred recovery of funds taken from debtor's estate, pursuant to statute, and deposited in the Referee's Salary and Expense fund)).

**16.** *See* discussion *supra.*

**17.** The majority finds support for its argument in the fact that Charles Abernathy's article recommends removing barriers to injunctive relief in government employment cases, but does not mention removing barriers to back pay. Abernathy was specifically writing under the assumption that government employees had an adequate remedy at law for their back pay claims. Charles F. Abernathy, *Sovereign Immunity In a Constitutional Government: The Federal Employment Discrimination Cases*, 10 HARV. C.R.C.L.L.REV. 322, 364 n. 230 (1975). Abernathy's recommendation thus does not contem-

*Bowen* refers to the Medicaid statute which Massachusetts used to assert that payments had been wrongfully withheld, the Court's opinion focuses on the dichotomy between substitutionary and restitutionary relief, not on statutory authorization. *See, e.g.,* 487 U.S. at 900–01, 108 S.Ct. at 2735–36. The Court's reasoning in this regard appears to draw on the equitable maxim "Equity regards that as done which ought to be done." *See generally* GEORGE L. CLARK, PRINCIPLES OF EQUITY § 20 (1919); 1 MELVILLE M. BIGELOW, JOSEPH STORY'S COMMENTARIES ON EQUITY JURISPRUDENCE 68–69 (13th ed. 1886). An equity court seeks to restore the plaintiff to the position she would have been in had the defendant's illegal action never taken place. *Cf. Jacksonville Port Auth. v. Adams,* 556 F.2d 52, 56–57 (D.C.Cir.1977) (holding that District Court may award money due under a statute even though time for disbursement had expired). Had EPA acted constitutionally, Hubbard would have received the pay in question.

Additionally, in *Bowen* and *Maryland Department of Human Resources,* the statutory entitlement was necessary to create the cause of action. The grant-in-aid statutes, *and only the statutes,* provided the grounds on which the plaintiffs could complain that they, in the words of section 702, had "suffer[ed] legal wrong ... or [been] adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702 (1988). Here, the First Amendment provides the cause of action and, as we noted in our decision on the merits of Hubbard's claim, the Supreme Court has held that even plaintiffs with no prior property interest in their employment cannot be discharged for exercising those rights.[18] *Hubbard,* 949 F.2d at 460. As the resolution of the

fourth prong of the *Pickering* test necessarily shows, only EPA's violation of Hubbard's First Amendment rights prevented him from being employed and paid as a criminal investigator.

For the foregoing reasons, we respectfully dissent.

---

plate the plaintiff in a government employment case, such as Hubbard, for whom an adequate remedy at law does *not* exist.

**18.** The majority's reliance on *Testan,* holding that "one is not entitled to the benefit of a position until he has been duly appointed," is entirely misplaced. The Court in *Testan* concluded only that no relief was due to the plaintiff because there was no statute covering failures to upgrade job classifications. The plain-

tiffs in *Testan* asserted no cause of action except those based on the Back Pay Act and the Classification Act. And, as the Court noted, neither statute created a substantive right whose breach made the United States liable for pay lost through allegedly improper classifications. *See* 424 U.S. at 398–407, 96 S.Ct. at 953–58. Here, however, the First Amendment gives that substantive right.